## COAD v. COWHICK, ET AL.

JUDGMENTS — LIEN OF, ON AFTER-ACQUIRED LANDS — STATUTORY
CONSTRUCTION.

1.   A judgment of the district court is a lien on after-acquired
lands of the judgment debtor within the county where the
judgment is entered, under Section 3829, Rev. Stat., provid-
ing that "lands and tenements, within the county where the
judgment is entered, shall be bound for the satisfaction
thereof from the first day of the term at which judgment is
rendered ; but judgments by confession, and judgment
rendered at the same term at which the action is commenced,
shall bind such lands only from the day on which such judg-
ments are rendered; and all other lands, as well as goods and
chattels of the debtor, shall be bound from the time they are
seized in execution."

2.   Although the provision of the statute as to judgment lien
forms a part of the general code of procedure adopted from
the State of Ohio, and the courts of that State have decided
that a judgment is not a lien upon after-acquired lands of the
judgment debtor; said decision is not binding upon the courts
of this State, for the reason that the statute is not peculiar to
that State, but other States have the same provision, using
either the identical words or language the same in substance,
and in those other States a different construction has been
placed upon it; and for the further reason that the first
decision of Ohio was prior to the enactment of the statute,
and was based upon a misconception of the common law, and
the later decision construing the statutory provision was
largely founded upon the rule of *stare decisis;* and that rule,
in relation to this question, is not persuasive here, since there
had not been any decision of this court upon the question;
and the statute was construed in Ohio in the light of a mani-
festly erroneous view of the law of England.

[Decided January 10, 1901.   Rehearing denied Oct. 10, 1901.]

ON reserved questions from the District Court, Lara-
mie County, HON. RICHARD H. SCOTT, Judge.

In the order reserving the question, the facts are stated
substantially as follows : The plaintiff, Mark M. Coad,

on the 14th day of September, 1888, in the district court for Laramie county, recovered a judgment against Oscar F. Cowhick upon which a balance remained unpaid. June 18th, 1891, one John Y. Cowhick died intestate at the said county of Laramie, leaving as one of his heirs at law the said judgment defendant. Said intestate died seized of the real estate in controversy, and said real estate descended to the said judgment debtor as heir aforesaid as a part of his share of the estate of said decedent. August 29, 1891, the plaintiff procured execution to be duly issued upon the said judgment, and caused the same to be levied upon the said real estate on the same day; and thereafter, upon due advertisement, caused the interest of the judgment defendant to be sold, and the plaintiff became the purchaser, and a sheriff's deed thereto was duly executed conveying the said real estate to the plaintiff, under said execution. The sale had been duly confirmed. After the death of the said John Y. Cowhick, and before the levy of the execution, viz: August 15, 1891, the said judgment defendant executed and delivered to the defendant, Marshall Field & Co., a deed purporting to convey all the right, title, and interest of the said judgment defendant, as one of the heirs at law of the said decedent, in the estate of the said decedent. Said deed was recorded on the 15th day of September, 1891.

The question reserved was as follows: Upon the facts so raised, is a judgment, duly rendered in the district court within and for Laramie County, Wyoming, a lien upon after-acquired real estate of the judgment debtor in said Laramie County, as against a purchaser from said judgment defendant who acquired his deed before any execution is levied under said judgment: the judgment at all times involved being in full force and effect?

*Burke & Fowler*, and *John W. Lacey*, for plaintiff.

The decisions cited from Ohio do not amount to a construction of our statute, for the reason that the first de-

cision was based not upon the statute, which was subsequently enacted, but upon a misconception of the common law, and of the statute of Westminster 2, and the later decision was based upon the doctrine of *stare decisis.*

In this State we have adopted the common law of England as modified by judicial decisions and by declaratory or remedial acts, or statutes in aid of or to supply the defects of the common law, prior to the fourth year of James the First. The statute of Westminster 2 is therefore adopted here, and the statute of the State in relation to the lien of a judgment must be construed with that in view. Under the statute of Westminster 2 a judgment became a lien upon after-acquired property. (Stow v. Tifft, 15 Johns., 457; Handley v. Sydenstick, 4 W. Va., 605; 4 Kent's Com., p. 435; Greenway v. Marshall, 3 Humph., 177; Relfe v. McComb, 2 Head., 558; 3 Blackstone's Com., 418; 2 Cruise, 73; Ridge v. Prather, 1 Blackf., 401; 3 Preston on Abstracts, 350; Michaels v. Boyd, 1 Ind., 259; Wales v. Bogue, 31 Ill., 464; Root v. Curtis, 38 id., 192; 20 id., 57; 28 id., 376; Steele v. Taylor, 1 Minn., 210; Banning v. Edes, 6 id., 402; Trustees v. Watson, 13 Ark., 74; Colt v. Dubois, 7 Neb., 391; Lisle v. Cheney, 36 Kan., 578; Cowarden v. Anderson, 78 Va., 90; Straus v. Bodeker (Va.), 10 S. E., 570; Duel v. Potter, 51 Neb., 241; Moore v. Jordan, 117 N. C., 86; Babcock v. Jones, 15 Kan., 296; Pomeroy's Eq., 725; Freeman Judg., Sec. 339; id., 367; 1 Black Judg., Sec. 460; Cayce v. Stovall, 50 Miss., 396; Barron v. Thompson, 54 Tex., 235; Thulemyer v. Jones, 37 id., 560; Kollock v. Jackson, 5 Ga., 153; Ralston v. Field, 32 id., 453; McClung v. Beirne (Va.), 10 Leigh, 394; Dickson v. Hynes, 38 La. Ann., 684; Gallagher v. Hebrew Cong., 35 id., 829.)

The statutes of many of the States are practically identical with ours, and from the authorities cited, it will be seen that almost universally, with such statutes added to the statute of Westminster, the lien is held to attach to after-acquired lands.

*Clark & Breckons,* for defendants.

Under the common law, pure and simple, the judgment was not a lien upon lands of the debtor, nor could his lands be sold to satisfy the judgment. Whatever right the creditor had to take the land of his debtor was given by statute. In the American States the lien of the judgment upon lands was, in most instances, established by virtue of express legislative enactment. In such States as did not so recognize it, it either did not exist at all, or existed only by virtue of some other statute or rule of law adopting the English statutes. (Black on Judg., Sec. 397–399.) In this State the question was not left to the common law, nor to statutes in aid of the common law. Perhaps in the absence of legislative enactment, the statute of Westminster would have been in force. But the first Legislature of the Territory enacted a statute in relation to judgment liens, choosing not to rely upon the adoption of the common law and English statutes. Whatever right, therefore, there is to a lien by judgment, must be determined by reference to our statute.

It is clear that the statute does not unmistakably bind after-acquired lands. What, then, is the construction to be placed upon the statute? Our code and the statute in question were taken from the State of Ohio, and the well-known rule of construction in case of borrowed statutes becomes important. In Ohio, it is held that the judgment lien does not reach after-acquired lands. (Roads v. Symmes, 1 O., 314; Stiles v. Murphy, 4 id., 91; Riddle v. Bryan, 5 id., 51; Smith v. Hoge, 40 N. E., 406.) It is evident that the Legislature in all matters relating to judgments carefully followed the Ohio code. The decisions, therefore, of the courts of Ohio are controlling upon our courts. The decisions of other States are not important, as they can be nothing more than constructions of their own statutes. In Pennsylvania it is held that the ruling of the English courts is wrong. (Calhoun v. Snider, 6 Binn., 135 ; Richter v. Selin, 8 S. & R.,

425; Rosse's App., 166 Pa. St., 82; Rundall v. Ettwein, 2 Yates, 23; Packer's App., 6 id., 277; Leas v. Hopkins, 7 id., 492; Walter's App., 35 id., 523.) In Iowa the decisions of Ohio and Pennsylvania were followed. (Harrington v. Sharp, 1 Greene, 131.)

CORN, JUSTICE.

The sole question submitted in this case is whether, in this state, a judgment of the District Court is a lien upon after-acquired lands. Our statute upon the subject is as follows: Sec. 3828. "Lands and tenements, including vested interests therein, and permanent leasehold estates, renewable forever, and goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution, and sold as hereinafter provided."

Sec. 3829. "Such lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered ; but judgments by confession, and judgment rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands, as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution."

At common law, except for debts due the king, the lands of the debtor were not liable to the satisfaction of a judgment against him, and consequently no lien thereon was acquired by a judgment. But by the statute (West M. 2, 13 Edw., 1), the judgment creditor was given his election to sue out a writ of *fi. fa.* against the goods and chattels of the defendant, or else a writ commanding the sheriff to deliver to him all the chattels of the defendant (except oxen and beasts of the plow) and a moiety of his lands until the debt should be levied by a reasonable price and extent. When the creditor chose the latter alternative, his election was entered on the roll, and hence the

writ was denominated an *elegit*. Hutcheson v. Grubbs, 80 Va., 254. While this statute did not in direct terms create the lien, courts so construed it as to infer a lien from the power to take the lands in execution. Scriba v. Deanes, 1 Brockenbrough, 170. And this lien has been held by the English courts and by the almost unanimous opinion of the courts of this country, to extend to the after-acquired lands of the debtor. Most of the States have enacted statutes declaring the lien, and almost without exception, and without regard to whether such statute in terms extended the lien to after-acquired lands, they have held that such lands were bound by the judgment from the time of their acquisition by the debtor. Freeman on Judgments, 367. So far as I can find, the only two exceptions are Pennsylvania and Ohio. There was also a similar holding in Iowa. Harrington v. Sharp, 1 Greene, 131. But the rule laid down in that case was subsequently changed by an amendment to the statute expressly providing that judgments should be a lien upon after-acquired lands, thus bringing it into line with the mass of opinion in this country. Ware v. Delahaye, 95 Iowa, 682. The Mississippi court is also cited as adopting the same construction. But an examination of the cases shows that that court simply rejected the contention that lands subsequently acquired were bound from the date of the judgment, and held that "the lien attached on after-acquired property from the time it was acquired by the debtor." Moody v. Harper, 25 Miss., 492; Cayce v. Stoval, 50 Miss., 402.

But it is contended that our Legislature having adopted the language of the Ohio statute, we are bound by the construction given to it by the Ohio courts. The case of Roads v. Symmes, 1 Ohio, 314, which settled the law in that State, is not a construction of the statute under consideration, but is an exposition of the rule at the common law or under the statute of Westminster 2. The court deem it unnecessary to decide whether it was a maxim of the common law or was first introduced by the statute of

Westminster 2, as they say both are equally the law in Ohio. And the decision is expressly based upon the reasoning in the Pennsylvania case of Calhoun v. Snyder, 6 Binney, 145. But the decision in the Pennsylvania case is not based upon the common law nor the statute of Westminster 2. The author of Freeman on Judgments says of that decision : " As long ago as the year 1813, in the case of Calhoun v. Snyder, the judges in Pennsylvania, in deference to a long course of decisions in that State, were constrained to decide that no judgment could ever attach as a lien upon lands in which the judgment debtor had no interest at the date of its rendition. The judge delivering this opinion at the same time said : "I am well satisfied that by the English common law lands purchased by the defendant, after judgment, but aliened before execution, were bound by the lien." Forty seven years later it was said in the same State that, "whatever may be thought of the doctrine of Calhoun v. Snyder, that a judgment lien does not bind after-acquired real estate, it is too firmly established in the jurisprudence of this State to be shaken at this day." Waters' Appeal, 35 Pa. St., 523. The rule thus established in Pennsylvania, and confessedly repugnant to the common law, was adopted in a few other American cases. It is, nevertheless, clearly repudiated, in favor of the common-law rule, by the vast majority of the American decisions declaring judgments to be liens upon real property acquired by the defendant, after their rendition. Freeman on Judgments, Sec. 367. The Ohio court in 1829, in Stiles v. Murphy, 4 Ohio, 92, reaffirmed the doctrine as laid down in Roads v. Symmes. But while they construe the statute then in force in that State, they base their decision upon Roads v. Symmes, and they say in conclusion, "That decision may have been an innovation upon established principles of law,— it may have been a departure from true policy, under the circumstances in which we are placed,— but it would be a more dangerous innovation, and a wider departure from true policy now to disturb it." The

language of the statute as quoted in Stiles v. Murphy is "the lands and tenements of the debtor shall be bound for the satisfaction of any judgment against such debtor, from the first day of the term at which judgment shall be rendered;" and, it will be observed, is not in terms the same as the one subsequently in force in that State and adopted by the Legislature of Wyoming.

We fully concede that the rule relied upon, that in adopting the statute of another State we also adopt the construction which it has received, is one of great importance and very generally applied; but it is based upon a specific and sufficient reason, which is, that the Legislature are presumed to have known the construction which the words of the statute have received, and if they had intended any other construction, they would have used apt words to express the change. But this statute is not peculiar to the State of Ohio. Other States have the same provision, using either the identical words or language which is in substance the same. And they have, almost without exception, given to the language a different construction. Must it not also be presumed that the Legislature knew the construction given to it generally by the courts of this country and England? The adoption of the identical words of the Ohio statute is not specially significant in view of the fact that they are but a part of our code of civil procedure, covering more than two hundred pages of our Revised Statutes, and adopted bodily almost without change from the code of Ohio.

This construction has from time to time been urged upon the courts of other States, but with practical unanimity they have declined to adopt it. The language of the Kansas statute was : "Judgments shall be liens on the real estate of the debtor within the county in which the judgment is rendered; but judgments by confession and judgments rendered at the same term during which the action was commenced, shall bind such lands only from the day on which judgment was rendered." Brewer, J., in delivering the opinion of the court, says:

" Counsel for plaintiff in error contend that our statute resembles the Ohio statute, and that, therefore, adopting it, we adopt the construction given there.   Our statute is not a copy of the Ohio statute; and while it resembles it very closely, yet little, if any, more so than it does the statutes of some of the other States, as for instance, Tennessee.   Nor do we understand the Ohio court, in the case in 1 Ohio, in which the question was first decided, as resting their decision upon the peculiar language of their statute.   It should perhaps be stated that the statute now in force in Ohio, and from which it is claimed ours was taken, is not exactly like the one in force at the time of the decisions quoted."   And the Kansas court held that the lien did bind after-acquired lands.   Babcock v. Jones, 15 Kansas, 233.   In Nebraska, the statute was in the words of the Ohio statute, they, like ourselves, having adopted the Ohio code of procedure.   The supreme court of that State had stated in Filley v. Duncan, 1 Neb., 134, that the lien of a judgment did not attach to lands acquired after its rendition, so as to affect *bona fide* purchasers.   But upon the question being presented to the court in Colt v. Dubois, 7 Neb., 392, they disregard the *dictum* in Filley v. Duncan, and hold that the lien attaches to after-acquired lands.   The question again came before that court in Berkley v. Lamb, 8 Neb., 392, and the adoption of the Ohio view was insisted upon.   One of the justices, in a separate opinion, not only maintained that the Ohio decision was binding upon the Nebraska court, but that such was the proper construction of the language of the statute itself; contending that as lands not then owned by the judgment debtor could not be affected by the lien on the first day of the term at which the judgment was rendered, the expression, " all other lands," must include lands not then owned by the debtor.   But the Nebraska court has adhered to the rule as stated in Colt v. Dubois.   Duel v. Potter, 51 Neb., 241.   And the true construction of the language of the statute seems to be found in the fact that the judgments of the English

courts of general jurisdiction were liens upon the lands of the debtor throughout the kingdom, whether owned at the time or afterward acquired. The object of the American statutes was to limit the lien to lands within the county where the court was held; land without the county to be bound only from the time they are seized in execution. That this is the meaning of our statute, is still more apparent from the language of the succeeding section (3830), establishing the lien of judgments of the supreme court: " A judgment of the supreme court, for money, shall bind the lands and tenements of the debtor, within the county in which the suit originated, from the first day of the term at which judgment is entered, and all other land, and the goods and chattels of the debtor, from the time they are seized in execution." Here the distinction is very clearly drawn between lands within the county, and all other lands; and it would be a violent assumption to suppose that the general purpose of the two sections is not the same.

The decisions in Pennsylvania and Ohio, as before observed, are substantially conceded by the courts of those States to have been erroneous, and are only adhered to under the rule of *stare decisis*. That rule is not in any measure persuasive with us, the question not having been passed upon before by this court, and no such rule of property having been established in this State. Most of the States have enactments similar to our own, to which they have given a construction extending the lien to after-acquired lands, and this was the prevailing construction long prior to the adoption of the statute by us.

Our conclusion is, therefore, that, having adopted the statute of Westminter 2 into the legislation of this State, we adopted the construction given to it with substantial unanimity by the courts of England and this country, that the lien of the judgment attaches to the after-acquired lands of the debtor. And that our enactment upon the subject was framed for the purpose of adapting that statute to our conditions by defining the territorial

limits of the lien existing by force of it, and not to change the character or extent of the lien in any other respect.

POTTER, C. J., and KNIGHT, J., concur.