## CITIZENS NAT. TRUST & SAVINGS BANK OF LOS ANGELES v. UNITED STATES et al.

### No. 10232.

Circuit Court of Appeals, Ninth Circuit.

April 28, 1943.

Paul J. Otto and H. Elliot Pownall, Jr., both of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, Muriel S. Paul, and Willard H. Pedrick, Sp. Assts. to Atty. Gen., and Leo V. Silverstein, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Asst. to the Chief Counsel, B. I. R., all of Los Angeles, Cal., for the United States.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant appeals from a judgment of the District Court holding that the United States has a lien upon specified property superior to appellant's lien.

On March 9, 1938, appellant Bank recovered a judgment against one Taft. On March 13, 1938, Taft inherited an undivided one-fourteenth interest in an estate. On April 9, 1938, the Bank levied a writ of execution on the interest of Taft in the said estate. Subsequently, on September 20, 1940, the Collector of Internal Revenue levied a warrant of distraint on Taft's interest in the said estate claiming a lien thereon for federal income taxes assessed against Taft in the following circumstances: The assessment lists for 1926 and 1927 were received by the Collector of Internal Revenue in December, 1930, and for 1928 in August, 1931. Notice was given to the taxpayer of deficiencies for the years 1926, 1927 and 1928, and payment-

demanded. Warrants of distraint were issued in February and December, 1931. Notices of liens securing the three tax assessments were duly filed in 1931 with the Clerk of the District Court and with the County Recorder of Los Angeles County.[1] In 1932 Taft signed an agreement to the effect that the amounts assessed might be collected from him by distraint or by a court proceeding commenced at any time.

A civil action was commenced in the District Court in July, 1941, by the United States praying enforcement of the lien pursuant to § 3207 of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code, § 3678. The Bank, claiming an interest in the estate property of Taft, was made a party defendant. The issue turned upon the correctness of the Bank's claim that its lien by virtue of its judgment and levy of execution was prior in time and therefore was superior to the lien of the United States by virtue of its distraint proceedings.

The District Court concluded as a matter of law that the United States acquired a lien upon all property and rights to property belonging to the taxpayer as of the dates the Collector of Internal Revenue received the assessment lists covering the federal income taxes in issue under the provisions of § 3186(a) of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code, § 3670. It concluded, further, that by virtue of § 3186(a), 26 U.S.C.A. Int.Rev.Code, § 3671, the said liens have continued in force to the present time, that they attached to all property and rights to property acquired by the taxpayer, including his inherited interest in the estate; that the tax liens are superior to the Bank's liens; and that the United States is entitled to an order for the sale of Taft's interest in the estate.

The controlling statute (Revised Statutes § 3186, as amended by § 613, Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, p. 461) is as follows:

"(a) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. [26 U.S.C.A. Int.Rev.Code, § 3670] Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. [26 U.S.C.A. Int.Rev.Code, § 3671]

"(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—* * * [26 U.S.C.A. Int.Rev.Code, § 3672(a)"

The Bank appeals.

The Bank contends that the statute gives the United States a lien only upon property possessed by the taxpayer at the time of the distraint and that at the time the Bank's lien became effective, the property in issue was free from any government lien. It argues, further, that the United States may pursue after acquired property not by the enforcement of a lien, but by further distraint proceedings or by direct court action.

The statute provides that the United States shall have a lien upon "all property" belonging to the taxpayer. There is no limitation placed on the expression in the statute "the amount * * * shall be a lien * * * upon *all* property and rights to property." That this expression is not limited to property possessed by the debtor at the time the distraint is laid is plainly indicated by the provision of the statute that the lien "shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time," an amendment made by § 613 of the Revenue Act of 1928. Formerly, the statute decreed that the lien was in effect "until paid." If the lien is not considered as applying to after acquired property, the amendment is meaningless, for the lien would continue in any event as to property owned when the lien arose.

A second indication of the correct interpretation of § 3186 lies in the comparison of a federal tax lien and a judgment lien. An analogy between the two may be drawn in accordance with the theory of Bull v. United States, 295 U.S. 247, 55 S. Ct. 695, 79 L.Ed. 1421, that a federal tax lien has the effect of a judgment. The common law rule and the rule adopted by the weight of authority in the absence of a specific statutory provision is that a judgment lien attaches to after acquired

---

[1] See Revised Statutes § 3186 (b), as amended by § 613, Revenue Act of 1928, 26 U.S. C.A. Int.Rev.Code, § 3672(a).

real property of a debtor. Freeman on Judgments, 5th Ed., § 955, p. 2007; Atlas Portland Cement Co. v. Fox, 49 App.D.C. 292, 265 F. 444, 266 F. 1021; Coad v. Cowhick, 9 Wyo. 316, 63 P. 584, 87 Am. St.Rep. 953. Some of the statutes considered adapt themselves less easily to the common law rule than does § 3186. The claimed liens in this case are upon personal property, but that fact does not change the situation as the section expressly extends to "all property and rights to property, whether real or personal."

■ However, if the statute is so general in its terms that an administrative interpretation may be held to be appropriate, we have such interpretation. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263.

A memorandum in connection with § 613 of the Revenue Act of 1928, amending § 3186 of the Revised Statutes, G.C.M. 4715, VII-2 Cum.Bul. 94 (1928), declared that the provision for release of a tax lien did not necessitate removal of the lien before the limitation period because "a delinquent taxpayer may at any time prior to the expiration of the statutory period of limitations become possessed of property against which the lien may attach, thus making the tax enforceable through the lien."

Treasury Decision 4275, VIII-2 Cum.Bul. 167 (1929), after mentioning the fact that tax liabilities are often unenforceable because a taxpayer possesses no property, stressed that the liability continues until the tax is satisfied or until the statutory period for collection has expired and advised that collectors should investigate delinquency where a notice of lien has been filed, in order to obtain an extension of time for collection "whenever it is reasonably possible that the taxpayer may, in the future, acquire property or property rights from which the tax liability may be satisfied."

Although not binding upon us, we deem it appropriate to quote as follows from Graves v. Commissioner, 12 B.T.A. 124, 133: "It relates back from the time of notice and demand to the time when the assessment list was received by the collector, and it attaches upon such property as the taxpayer has at the time the lien arises, that is, at the time of notice and demand, United States v. Pacific R. R., [C.C.], 1

F. 97, and, of course, to all the property that the tax debtor subsequently acquires."

That § 3186 has been understood by those administering the revenue laws to create a lien on after acquired property of the taxpayer is obvious. In none of their expressions of opinion can there be found any indication that additional proceedings are necessary in order to perfect a lien on such after acquired property. They contemplate a lien which automatically attaches to any property acquired subsequent to the date the original lien arose.

■ Since the promulgation of the departmental view, the section has been twice amended with no addition of a definite provision as to after acquired property and presumably with the Congressional knowledge of the departmental interpretation. Therefore, such interpretation must be taken as approved by Congress. Helvering v. R. J. Reynolds Co., 306 U.S. 110, 59 S. Ct. 423, 83 L.Ed. 536; Bryant v. Commissioner, 9 Cir., 111 F.2d 9; Commissioner v. Plestcheef, 9 Cir., 100 F.2d 62.

Only two decisions can be found discussing a question similar to that in issue, United States v. Pacific R. R., C.C.Mo., 1 F. 97, 98; and United States v. Long Island Drug Co., 2 Cir., 115 F.2d 983. In the former case the United States sued to enforce a lien for taxes on property owned by the railroad when the tax accrued, but subsequently, and before any demands were made for the payment of the taxes, conveyed to purchasers without notice of the tax lien. The court held that § 3186 of the Revised Statutes referred to property belonging to the taxpayer at the time the demand by which the lien was created was made, not when the tax became due, and thereby protected the intervening innocent purchasers. "By this construction the lien, when it once attaches, relates back to the time when the tax was due, but it does not attach to the property transferred to innocent purchasers prior to demand. This view also harmonizes with the general policy of the law relating to land titles, which is to protect the citizen against loss from secret liens, not disclosed by any public record nor ascertainable by due diligence." Page 100 of 1 F.

The reasoning of the Pacific Railroad case is not applicable here. First, the early opinion was not concerned with the problem of after acquired property but with the situation of property owned at the

time the tax became due and transferred to innocent purchasers prior to demand for payment. Second, the case was decided when the pertinent section provided that the amount of the tax "shall be a lien in favor of the United States, from the time it was due until paid," and before the 1928 amendment that the lien "shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." Third, in 1913 the reason underlying the decision, i. e., protection of innocent purchasers from secret liens, was largely destroyed by an amendment to § 3186 providing that the tax lien should not be valid as against any mortgagee, purchaser, or judgment creditor until notice was recorded.

The Long Island Drug Co. case arose under § 3710 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3710, being an action by the government to collect from the Drug Company the amount of delinquent taxes due from one Steinberg on the ground that the Drug Company had in its possession accrued salary due Steinberg. The court held that at the time of the first demand on the Drug Company, Steinberg was indebted to the company, and that before the time of subsequent demands Steinberg had agreed with the company that any salary becoming due might be applied toward the repayment of loans on which he was surety. The court concluded that the Drug Company had no accrued earnings of Steinberg in its possession at the time of the levy. The problem of the government's lien on after acquired property of the taxpayer was not directly in issue although the court supported the Pacific Railroad decision by stating that "rights which do not exist at the time of the demand upon the taxpayer are not subjected to any lien." (Page 986 of 115 F.2d.)

The judgment must be affirmed.

DENMAN, Circuit Judge (dissenting).

Congress, for the protection of those dealing with delinquent taxpayers in transactions involving the securing of the taxpayer's obligations, has enacted provisions for the recordation of the delinquency. 26 U.S.C.A. Int.Rev.Code, § 3672. It is further provided that the period during which the lien upon the property of the delinquent taxpayer shall exist is six years after assessment of the tax. 26 U.S.C.A. Int.Rev.Code, §§ 276, 3671.

Congress also provided for an extension of the period during which the delinquent tax claims may be asserted. 26 U.S.C.A. Int.Rev.Code, § 276(c). The majority opinion holds that the tax lien attaches to after-acquired property and, in effect, holds that the recordation advising those dealing with the taxpayer loses all its value and becomes a mere trap to the persons so engaged in such transactions, by the unrecorded agreement of the taxpayer with the Government to extend the time during which the tax obligation shall exist. I do not believe that this was the intent of Congress.

It is true that the party engaged in the transaction with the taxpayer has notice that the taxpayer may have made such an agreement with the Government and, it may be argued, is thereby required to inform himself by inquiry of the taxpayer or the Treasury Department as to the existence of such an extension agreement. There is no statute requiring any Treasury official to disclose the existence of such an agreement. Such an inquiry may produce an erroneous negative answer or no answer at all. It has none of the certitude which Congress seeks to establish in its recordation provision. An untruthful response by the taxpayer may give certain legal remedies, but the purpose of the required recordation of the tax lien is to relieve the party dealing with the taxpayer from just such risk of having a law suit substituted for his security.

It is not necessary to consider what would be the effect of the recordation by the Treasury of the taxpayer's extension agreement or whether the taxing officials have the power to record it. Here it was not recorded and it is alleged, and not denied, that appellant had no notice of its existence. In my opinion Congress intended the recordation of the tax lien to enable third persons to take the property of the taxpayer free of the tax lien, as security for his obligations six years after the assessment, unless such third person has notice of the extension agreement. Since the appellant acquired its lien after the expiration of the six years, without notice of the extension, it should be held superior to that of the Government.