**COASTAL CHEMICAL CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 1370(N).

United States District Court,
S. D. Mississippi, W. D.

Aug. 16, 1974.

John C. Satterfield, Satterfield, Shell, Williams & Buford, Yazoo City, Miss., for plaintiff.

Jack D. Warren, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

OPINION

NIXON, District Judge.

This action is before the Court on joint Motions of the parties, Coastal Chemical Corporation, and United States of America, for Summary Judgment. This Court having carefully considered the record herein, including interrogatories and answers thereto, affidavits, and a Stipulation of Facts, makes the following determinations.

ISSUES

(1) Whether the plaintiff paid the taxes and interest in question and, as a result, has standing to maintain this action for their recovery.

(2) Whether distributions of cash and corporate stock made by the plaintiff to a foreign corporation, constituted income and thus required the plaintiff to withhold income tax.

(3) Whether the fair market value of the shares of capital stock distributed to the foreign corporation was overstated for the last two years involved.[1]

FINDINGS OF FACT

1. This is a civil action instituted by the plaintiff, Coastal Chemical Corporation (Coastal), against the defendant, United States of America, for the recovery of $67,277.77 in income taxes, including interest thereon, alleged to have been erroneously or illegally assessed and wrongfully collected for the fiscal years ending June 30, 1961, 1962, 1963 and 1964, such years being referred to hereinafter as 1961, 1962, 1963 and 1964, respectively. (Stipulation, Par. 1).

2. Coastal is a corporation organized under the laws of the State of Mississippi and has its principal place of business and office at Yazoo City, Mississippi which is within the Western Division of the Southern Judicial District of Mississippi. Acomex Agentes Comerciales en Mexico, S.A. (Acomex), is a corporation organized under the laws of Mexico which is not engaged in a trade or business in the United States and has its domicile and principal place of business in Mexico City, Mexico. Acomex, upon Motion of the United States, was dismissed as a party in this suit for lack of in personam jurisdiction. (Stipulation, Pars. 2, 5, and 19).

3. During the years in question, Coastal's capital stock consisted of four classes of common stock denominated Class A, Class B, Class C and Class D, each class having a par value of $25.00 per share except Class B which had a par value of ten cents per share. On October 20, 1960, Acomex acquired 40 shares of Coastal's Class A stock, and at all times material herein has been one of Coastal's shareholders. (Stipulation, Pars. 4, 5).

4. During all times material herein, Coastal was engaged in manufacturing and selling agricultural fertilizers and Acomex was engaged in the business of importing fertilizers for sale to Mexican farmers and dealers. In each of the fiscal years in question, Acomex purchased mixed fertilizers from Coastal which were thereafter sold to residents and Citizens of Mexico or to entities formed under Mexican law. Acomex was not, however, engaged in a trade or business in the United States during this period. (Stipulation, Pars. 3, 5).

5. Coastal's Charter (Art. IV, Sec. E), provided that "(t)he primary purpose of the corporation (was) to provide commodities to stockholders who are bona fide producers of agricultural products at cost * * *." In connection with this provision, the Charter also provided that no sale or transfer of the corporation's stock, unless specifically approved by the board of directors, was to be made to any entity not "primarily engaged in the production of agricultural products."

---

1. In the briefs submitted subsequent to the filing of the pre-trial order and the proposed findings of fact and conclusions of law, both parties seemingly limit the questions presented to these three issues. This Court agrees that the resolution of these questions will fully and completely dispose of this case.

6. Under Coastal's Charter (Art. IV, Sec. F), subject to specified exceptions, each owner of the corporation's Class A or Class B stock was entitled to the preferred patronage right to purchase during each fiscal year of the corporation, any of the products manufactured by the corporation, except straight nitrogen fertilizer, having a total purchase price of up to one and one-half times the par value of his stock. Each owner of Class C or Class D stock was entitled to purchase one ton of straight nitrogen fertilizer for each four shares of stock he owned. (Stipulation, Par. 6).

7. As a result of these purchases, Acomex was entitled to patronage refunds or dividends based upon the amount of its patronage during the fiscal years in question. Coastal's charter provided (Article V, Sec. B), that as of the end of each fiscal year, all the excess of the aggregate selling price over the aggregate cost of manufactured products sold to stockholders would be refunded to each stockholder patron in proportion to the amount of his patronage of manufactured products of the corporation during the fiscal year. (Stipulation, Par. 7).

8. During the suit years, Coastal produced, and Acomex purchased from it, at the total purchase price indicated, mixed fertilizer as follows:

| FYE 6-30 | Tons Produced by Coastal | Tons Purchased by Acomex | Total Purchase Price Paid by Acomex |
|---|---|---|---|
| 1961 | 128,385 | 2,789.11 | $264,762.98 |
| 1962 | 188,233 | 6,079.71 | 482,209.39 |
| 1963 | 332,779 | 3,356.01 | 231,471.60 |
| 1964 | 402,347 | 3,126.25 | 206,687.63 |

(Stip. Par. 8)

———————◆———————

9. At the end of each of the suit years, Coastal notified Acomex in writing that patronage refunds in specific amounts were due and payable to Acomex. The notices disclosed to Acomex the stated dollar amount of the earnings of Coastal which had been allocated to Acomex by Coastal and the portion thereof which constituted patronage refunds to Acomex. The amounts of the patronage refunds specified in the notices and the dates of payment thereof for each year, respectively, were as follows:

| FYE 6-30 | Amount Due Per Notice | Payment Date |
|---|---|---|
| 1961 | $40,402.83 | 8-17-61 |
| 1962 | 71,285.50 | 8-15-62 |
| 1963 | 37,864.59 | 8-16-63 |
| 1964 | 38,662.16 | 8-15-64 |

(Stip. Par. 9)

10. The patronage refunds, indicated in the notices to be due and payable to Acomex with respect to each of the suit years, were equal to a calculated percentage of the total amount Acomex had paid Coastal for mixed fertilizers purchased during such years, respectively, as follows:

| FYE 6-30 | % of Total Purchase Price Payable as Patronage Refunds |
|---|---|
| 1961 | 15.2600 |
| 1962 | 14.7831 |
| 1963 | 16.3582 |
| 1964 | 18.7056 |

(Stip. Par. 10)

11. The full amount of the patronage refunds for each year, which Coastal notified Acomex was due and payable, was paid to Acomex in cash and certificates of Coastal's Class A common stock. The amount of cash paid to Acomex, the value assigned to the shares of stock

delivered to Acomex and the number of such shares, for purposes of paying such patronage refunds for each year, were as follows:

| FYE 6–30 | Cash Paid | Value Assigned to Stock | No. of Shares | Amount of Patronage Refunds |
|---|---|---|---|---|
| 1961 | $ 305.20 | $ 40,097.63 | 1,336.5876 | $ 40,402.83 |
| 1962 | 10,175.12 | 61,110.38 | 2,037.0126 | 71,285.50 |
| 1963 | 27,920.18 | 9,944.41 | 284.1260 | 37,864.59 |
| 1964 | 34,584.09 | 4,078.07 | 116.5163 | 38,662.16 |
| | $72,984.59 | $115,230.49 | 3,774.2425 | $188,215.08 |

(Stip. Par. 11)

12. For purposes of paying the indicated patronage refunds, the prevailing sale price of the shares of stock delivered to Acomex was determined by the board of directors of Coastal to be $30 per share in the first two years involved and $35 per share for the other years involved. Acomex acquiesced in such value. (Stip. Par. 12)

13. In computing its income tax liability for each of the suit years, Coastal excluded from its taxable income the amount of patronage refunds it paid to Acomex. (Stip. Par. 13)

14. For each of the years in suit, Coastal filed Treasury Forms 1042 (U. S. Annual Return of Income Tax To be Paid at Source) and 1042S (U. S. Annual Information Statement of Income Paid to Nonresident Aliens, Etc.) with the Director of International Operations, Internal Revenue Service, Washington, D. C. In these forms, Coastal reported that it had paid specific amounts of gross income to Acomex, that the nature of such income was "patronage refund," that no tax was due thereon and that the amounts so paid were exempt from withholding. The amounts paid to Acomex and so reported were the same above amounts which Coastal notified Acomex were due and payable to Acomex as patronage refunds. (Stip. Par. 14)

15. On March 18, 1963, Coastal adopted a "consent" by-law conforming to the provisions of Section 1388(c)(2)(B) of the Internal Revenue Code of 1954. This by-law (Art. V, Sec. C) became effective on the date of its adoption and due notice thereof was given to the shareholders. It provided as follows:

"Each person who hereafter applies for stock and becomes a stockholder in this Corporation and each stockholder of this Corporation on the effective date of this provision who continues as a stockholder after such date shall, by such act alone, consent that the amount of any distribution with respect to his patronage occurring after July 1, 1963, which are made in written notices of allocation (as defined in 26 U.S.C. 1388) and which are received by said stockholder from the Corporation, will be taken into account in the manner provided in 26 U.S.C. 1385(a) in the taxable year in which such written notices of allocation are received by him."

(Stip. Par. 15)

16. Acomex did not file or cause to be filed with any office or official of the United States a United States income tax return for any one or more of the years 1961, 1962, 1963, and 1964. (Stip. Par. 16)

17. Upon audit of the Treasury Forms 1042 and 1042S referred to above having been filed by Coastal, the Commissioner of Internal Revenue determined that the amounts of the patronage refunds paid to Acomex, a nonresident alien, were subject to the withholding of income tax at the source under the

provisions of Section 1441(a) of the Internal Revenue Code of 1954. A statutory notice of tax deficiency based upon such determination was sent to Coastal by certified mail on May 23, 1966.

Thereafter, the tax deficiency indicated in the notice was assessed against Coastal. This deficiency amounted to $67,277.77 for the four years involved, broken down as follows:

| FYE 6-30 | Tax | Interest | Total |
|---|---|---|---|
| 1961 | $12,223.17 | $ 3,316.33 | $15,539.50 |
| 1962 | 21,466.15 | 4,536.12 | 26,002.27 |
| 1963 | 11,359.38 | 1,713.84 | 13,073.22 |
| 1964 | 11,598.65 | 1,059.13 | 12,657.78 |
| | $56,647.35 | $10,630.42 | $67,277.77 |

(Stip. Par. 17)

———◆———

18. On or about October 3, 1966, Coastal mailed a check for $67,277.77 to the Internal Revenue Service for the purpose of satisfying the assessment against it. (Stip. Par. 18)

19. After the assessment was satisfied by payment, Coastal and Acomex each filed claims for the recovery of such payment. When these claims were not allowed administratively, Coastal and Acomex instituted the instant action, each seeking, in separate counts, to recover the payment. The United States then filed a Motion to Dismiss the case sub judice on October 4, 1971, on the ground that Coastal was not the real party in interest and that suit should be brought by Acomex in the United States District Court for the District of Columbia under 24 U.S.C. § 1402(a)(2). Thereafter, Acomex filed suit in the District of Columbia on October 26, 1971, but that action was dismissed, upon motion of the government, because of the pendency of the present action and the contention by the United States that Coastal, as withholding agent, was the real party in interest.[2] On December 18, 1972, this Court overruled the government's Motion to Dismiss on the ground

that Coastal was not the real party in interest, but dismissed Acomex as a party to this suit for lack of jurisdiction.

20. In early 1959, Coastal and its affiliate, Mississippi Chemical Corporation, became concerned as to whether they were required to withhold tax on patronage dividends which they paid to nonresident alien stockholders. As result of their concern, they requested, by letter dated December 18, 1959, a ruling from the Internal Revenue Service on the following questions:

1. Will the nonresident alien be required to pay income tax to the United States upon patronage dividends received by him from MCC or Coastal (a) if he is a nonresident alien individual not engaged in trade or business in the United States and (b) if he is a nonresident alien individual who is engaged in trade or business within the United States?

2. Under the charter of Coastal, common stock dividends are payable to stockholders. Will the nonresident alien stockholder (a) not engaged in trade or business in the United States, or (b) engaged in trade or business in the United States, be required to pay

2. The seemingly conflicting positions taken by the United States in the two lawsuits were brought about, it contends, by the failure and refusal of Coastal and Acomex to denote which party actually paid the tax and interest thereon in question. The determination of this question is necessary in order to resolve the first issue in this case concerning the standing of Coastal to maintain this action.

income tax upon cash dividends paid upon such common stock and upon dividends paid in either stock or certificates of indebtedness of the corporation?

3. If the answer to either of the above questions is in the affirmative, is MCC or Coastal, as the case may be, required to withhold from the payment of either patronage dividends or common stock dividends the amount of income tax payable?

(Stipulation, Par. 21; Complaint, Exh. E).

21. In a letter dated December 18, 1964, the Internal Revenue Service responded to the request for ruling of MCC and Coastal as follows:

1. Nonresident alien patrons of MCC and Coastal will be required to pay income tax to the United States upon patronage dividends received by them from MCC or Coastal. If they are not engaged in a trade or business within the United States, the rate of tax on such income (i. e. patronage dividends) will be 30%, as provided in section 871(a) of the Internal Revenue Code of 1954. If they are engaged in a trade or businsss within the United States, such nonresident alien individuals will be taxed as provided in section 871(c) of the Internal Revenue Code of 1954. In determining the amount of the patronage dividends to be included in the gross income of the nonresident alien patrons of MCC and Coastal, the rules set forth in section 1.65–5 or section 1.1385 of the income tax regulations should be applied, depending on the taxable year to which the patronage relates.

2. Dividends paid to nonresident alien individuals (who are stockholders of MCC or Coastal) on the basis of their stock holdings are includible in the gross income of such nonresident alien

stockholders and would be subject to income tax as provided in section 871 (a), or section 871(c) of the 1954 Code, as the case may be, depending on whether such nonresident alien individual is engaged in trade or business within the United States.

3. Both MCC and Coastal are required to withhold income tax from the payment of both patronage dividends and dividends on capital stock to nonresident alien individuals as provided in section 1441(a) of the Internal Revenue Code of 1954.

(Stipulation, Par. 21; Complaint, Exh. F).

22. Coastal contends that the foregoing ruling reflects an erroneous view of the law. It is the position of Coastal that it is entitled to recover $67,050.19 [3] on the ground that the above amounts paid to Acomex constituted a refund of part of the purchase price of products purchased by Acomex and are not income to Acomex on which Coastal is required to withhold tax and that such payments were made under a legally binding contractual obligation arising under Coastal's charter and by-laws, whereby Coastal was required to refund to Acomex as a stockholder-patron the excess of the selling price over the cost of manufacture at the end of the fiscal year as a patronage dividend, preferred discount or price adjustment. Coastal further contends that those payments were refunds of a part of the purchase price on products purchased by Acomex from Coastal, which were held by Coastal as trustee or agent for Acomex and paid as discounts or rebates upon the purchase price of the commodity.

23. At the time this suit was instituted, Coastal contended in the alternative that it was entitled to recover $16,474.-61 on the ground that in computing the amount of the patronage refunds paid to

---

3. Coastal has requested that its demand for judgment of $67,277.77 be reduced by the sum of $227.58, the $67,050.19 figure representing the withholding taxes and interest paid because of deficiencies assessed against Acomex by the United States for the fiscal years in question. (Pre-Trial Order, Par. 9(c) and Plaintiff's Proposed Findings of Fact, Par. 3). This request will be granted.

Acomex, the fair market value of the shares of stock involved had been overstated by $5.00 per share. However, Coastal now concedes, for purposes of computing the amount of patronage refunds paid with respect to the first two years in suit, that the fair market value of such shares of stock was not overstated. (Stipulation, Par. 20).

24. On the other hand, the defendant contends that the above ruling by the IRS is a correct statement of the law applicable to the facts in this case and should be dispositive of the matter. The government contends that the plaintiff did not pay the taxes involved herein, and as a result, is without standing to maintain this action for recovery; that the patronage dividends in question did constitute income to Acomex subject to withholding taxes for which Coastal was liable; and finally, that in computing the amount of the patronage dividends paid to Acomex with respect to the last two years in suit, the fair market value of stock involved was not overstated.

25. Of the $67,050.19 in question herein, the government contends that $26,063.92 was furnished to Coastal by Acomex on or about August 15, 1966, for the purpose of applying this amount to the assessment and that the remaining $40,986.27 of the assessment, was also paid with funds of Acomex, the latter amount being borrowed by Acomex from Coastal. On the other hand, it is the contention of the plaintiff that the right of recovery was fixed at the time that the withholding agent, Coastal, actually paid the entire sum and that subsequent reimbursements are wholly immaterial. Furthermore, Coastal contends it paid all sums involved out of its own funds and because liability had been legally incurred by Coastal in the fiscal years in question, it is the proper party plaintiff to recover regardless of whether or not and when reimbursement may have been made.

26. This Court finds that Coastal did not withhold any of this $67,050.19 sum in question from patronage refunds or dividends paid to Acomex during the years 1961, 1962, 1963 and 1964; that this amount was paid to the IRS by Coastal out of its own funds for the purpose of satisfying the IRS assessment against it as withholding agent; and that subsequently Acomex reimbursed Coastal the total amount of $67,050.19 representing the total withholding taxes and interest paid by Coastal under the assessment. In this regard, this Court finds that Coastal was reimbursed in the amount of $26,063.92 by deduction from the cash portion of the patronage dividend payable by Coastal to Acomex for the fiscal year ending June 30, 1966, such amount being received and credited to Coastal on November 16, 1966, under authority in writing from Acomex dated August 15, 1966; that on October 6, 1966, Coastal was paid by Acomex by check $10,000.00 which was credited to the taxes and interest in question; that on October 21, 1966, Coastal was paid by Acomex by check $2,295.88 which was credited to the taxes and interest; that under authority in writing from Acomex dated August 17, 1967, Coastal was reimbursed in the amount of $13,642.07 by deduction from the cash portion of the patronage refund payable by Coastal to Acomex for the fiscal year ending June 20, 1967; and that under authority in writing from Acomex dated August 16, 1968, Coastal was reimbursed in the amount of $15,048.32 by deduction from the cash portion of the patronage refund payable by Coastal to Acomex for the fiscal year ending June 30, 1968. (Answers to Interrogatories, Pars. 32, 33; Affidavit of John C. Satterfield, General Counsel and Officer of Coastal; Affidavit of Luis R. Cano, Par. 21; and Stipulation, Par. 9).

27. In the fiscal year ending June 30, 1963, Coastal sold 231 shares of the stock in question for $35.00 per share and issued 28,303 shares in payment of patronage dividends at the rate of $35.00 per share. In the fiscal year ending June 30, 1964, Coastal sold 91 shares at $35.00 per share and issued 29,753 shares in payment of patronage dividends at that

same rate (Plaintiff's Answers to Defendant's Second Interrogatories, Par. 38). During such years, Coastal distributed 400.6423 shares to Acomex in payment of patronage dividends at the rate of $35.00 per share. (Stipulation, Par. 11). The latter value was mutually agreed upon, Coastal's Board of Directors found that such price was "the prevailing sales price of the shares" and Acomex acquiesced in that value. (Stipulation, Par. 12).

28. For the fiscal years ending June 30, 1963 and 1964, Coastal allocated a stated dollar amount of its earnings to Acomex and notified Acomex in writing of such action. (Plaintiff's Answers to Defendant's Second Interrogatories, Pars. 30 and 34). The full amount set out in these written notices of allocation "were paid to Acomex by Coastal and constituted patronage refunds resulting from Coastal's legally binding obligations." (Plaintiffs Answers to Defendant's Second Interrogatories, Par. 30 (a)). The record does not show, however, whether those notices provided that Acomex could redeem the stated dollar amount of the allocation in cash within 90 days. (Plaintiff's Answers to Defendant's Second Interrogatories, Par. 43).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of action and this action is brought in the proper venue.

2. Although the government contends this Court is without jurisdiction to grant the relief sought by the plaintiff because Coastal did not in fact pay the taxes it now seeks to recover, *Tomlinson v. Lefkowitz*, 334 F.2d 262 (5th Cir. 1964), the entire amount in question was paid by the withholding agent, Coastal, and Coastal is the proper party to bring this suit. In this regard, the right of recovery by Coastal, the withholding agent, was fixed at the time the sum in question was actually paid

and the subsequent reimbursement by Acomex at a later date is immaterial. It is clear that Coastal paid all sums involved herein, with its own funds, that the legal liability had been incurred by Coastal in 1961, 1962, 1963 and 1964 as withholding agent of Acomex, and that Coastal is the proper party plaintiff to recover for any overpayment of taxes in this case. The Motion of Coastal to reinstate Acomex as a proper party plaintiff to this lawsuit is denied.

3. The law imposes upon every foreign corporation not engaged in a trade or business within the United States a tax of 30% of the amount received from sources within the United States as interest, dividends, rents, salaries, wages, premiums, annuities, compensation, remunerations, emoluments, or fixed or determinable annual or periodic gains, profits and income. Section 881, Internal Revenue Code.

4. Sections 1441 and 1442 of the Internal Revenue Code require all persons, including corporations, having the control, receipt, custody, disposal or payment of such items of income to deduct and withhold this tax. The person or corporation required to deduct and withhold such tax must also make a return thereof and pay it over to the United States and is personally liable for such tax. Section 1461, Internal Revenue Code of 1954.

5. Subchapter T of the Internal Revenue Code of 1954 was enacted into law as a part of the Revenue Act of 1962 and was made effective as to taxable years beginning December 31, 1962. Thus, this subchapter is effective only with respect to the fiscal year which began on July 1, 1963, and ended on June 30, 1964, the last year in question. Subchapter T consists of eight sections, Sections 1381 through 1388, and provides for the tax treatment of cooperatives and their patrons. Patronage dividends are required by Section 1385 of this subchapter to be included in the gross income of the recipient.

6. The term "patronage dividend" is defined by Section 1388, Subchapter T, to mean an amount paid by a cooperative to a patron, (1) on the basis of quantity or value of business done with or for such patron, (2) under an obligation of the cooperative to pay such amount, which obligation existed before the cooperative received the amount so paid, and (3) which is determined by reference to the net earnings of the cooperative from business done with or for its patron.

7. Although Coastal now seemingly concedes that it did pay to Acomex a patronage dividend with respect to all four years in question (Plaintiff's Answer to Defendant's Second Interrogatories, Par. 26), the Court finds that the amounts so paid were patronage dividends and fall specifically within the statutory definition of this term. Such amounts were (1) based on the quantity of business Acomex did with Coastal (Plaintiff's Answer to Defendant's Second Interrogatories, Par. 29); (2) based on an obligation of Coastal to pay such amounts and such obligation existed before Coastal received the amount so paid (Stipulation, Par. 10); and (3) were determined by reference to the net earnings of Coastal from business done with or for its patrons (Plaintiff's Answers to Defendant's Second Interrogatories, Par. 34).

8. This Court finds that by statute, the patronage dividends which Coastal paid to Acomex with respect to the fiscal year 1964 constituted income, Section 1385, and were subject to the withholding tax; that Acomex consented to take into its income patronage dividends paid to it by Coastal with respect to the fiscal year ending June 30, 1964, by retaining its stock ownership in Coastal after March 18, 1963, when Coastal adopted the "consent" by-law to obtain such consent and duly notify Acomex, Section 1388(c)(2); that Coastal was required to withhold 30% of the amount of the patronage dividends it paid to Acomex because Acomex was a nonresident alien, Section 1441(a); and that as statutory withholding agent of the patronage dividends it paid to Acomex, Coastal was liable for such tax, Section 1461.

9. It is axiomatic that because Subchapter T became effective only with respect to the years beginning after December 31, 1962, it should not be taken to mean that patronage dividends paid in prior years did not constitute income to the recipient. In this regard, the Fifth Circuit stated in *Mississippi Valley Portland Cement Co. v. United States*, 408 F.2d 827 (5th Cir. 1969), Footnote 7, that "with respect to the definition of a patronage dividend, however, sections 1381, et seq. are merely a codification of prior case law". By enacting Subchapter T, Congress was not attempting to create income, but merely establish a procedure for the taxation of existing income. In language quite apropos to the issue herein, the Finance Committee's Report on the Revenue Act of 1962, S.Rep.No. 1881, 87th Congress Second Sess., p. 111 (1962–3 Cum.Bull. 707) states:

"The President recommended that what was thought to be the law in 1951 be provided specifically in the statute. Under the recommendation cooperatives would be allowed to deduct amounts allocated in cash or scrip as patronage dividends and patrons would be currently taxable on the patronage dividends allocated to them arising out of business activities.

"The House bill adopts an approach which in substance is substantially the same as that recommended by the President. It provides that the cooperative is not required to take patronage dividends paid in money, qualified allocations, or other property, except nonqualified allocations, into account in determining taxable income. A deduction is also provided for the nonqualified allocations when they are redeemed. For the patron, the bill provides that these same amounts (to the extent not attributable to purchases

for personal living expenses or capital items) are to be included in the income for tax purposes in the year received (or in the case of a nonqualified allocation, when redeemed)."

■ 10. Treasury regulations both before and after the adoption of Subchapter T provided for the inclusion of patronage dividends in the gross income of the recipient. See Treasury Regulation 1.61–5, approved on November 20, 1957 and Treasury Regulation 1.1385–1, approved March 28, 1963. These regulations should be sustained unless completely unreasonable or plainly inconsistent with the Revenue Statutes. See *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Boehm v. Commissioner of Internal Revenue*, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945).

11. The Internal Revenue Service has ruled on the facts in this case that patronage dividends are included in the gross income of the recipient for all four years in question. (See Finding of Fact No. 21). While this ruling in and of itself is not binding on the Court, it is entitled to respect and should not be overturned except for cogent reasons. *Citizens National Trust & Savings Bank of Los Angeles v. United States*, 135 F.2d 527 (9th Cir. 1943); *Biddle v. Commissioner of Internal Revenue*, 86 F.2d 718 (2d Cir. 1936).

■ 12. The technical amendments relating to Subchapter T provide that existing laws shall apply with respect to the years before Subchapter T was enacted. This Court is of the opinion that in addition to Treasury Regulation 1.61–5 and Section 61(a) of the Internal Revenue Code, which defines gross income as "income from whatever source derived," the Court decisions clearly establish that patronage dividends were includible in the income of the recipient prior to the enactment of Subchapter T. See *Mississippi Valley Portland Cement Company v. United States*, 408 F.2d 827 (5th Cir.

1969), Footnotes 6–7; *United States v. Mississippi Chemical Co.*, 326 F.2d 569 (5th Cir. 1964); *Commissioner of Internal Revenue v. Carpenter*, 219 F.2d 635 (5th Cir. 1955); *Harber Plywood Corp. v. Commissioner*, 14 T.C. 158 (1950); *Bradshaw v. Commissioner*, 14 T.C. 162 (1950); *Jarman v. Commissioner*, decided April 11, 1963 (P.H. Memo T.C., ¶ 63,104). In *Mississippi Chemical Corp., supra*, the Fifth Circuit specifically stated:

"When a legally enforceable obligation exists to a refund to qualified purchasers (stockholders-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, *such receipts are income of the patrons . . .* " (Emphasis added)

Coastal's reliance upon the statements in *Mississippi Chemical Corp., supra*, concerning grounds upon which the Courts have justified the exclusion of patronage dividends from income of co-operatives is misplaced. Merely because income is excludible from the gross income of one entity does not mean that it is excludible from the gross income of the recipient. Read as a whole, the Fifth Circuit opinion in *Mississippi Chemical Corp.* stands for the proposition that true patronage dividends are excludible from the income of the co-operative and includible in the income of the patron.

13. Accordingly, it is the opinion of this Court that the patronage dividends which Coastal paid to Acomex for the years 1961, 1962, 1963 and 1964 constituted income to Acomex and that Coastal was required to deduct, withhold and pay over to the United States the tax thereon.

14. Coastal contends that the capital stock which it distributed to Acomex with respect to years 1963 and 1964 were erroneously valued at $35.00 per share for purposes of satisfying its patronage dividend obligation to Acomex. It con-

tends that the fair market value of its stock was $30.00 per share.

15. The fair market value of the stock with respect to the fiscal year ending June 30, 1963, was includible in the income of Acomex under Treasury Regulation 1.61–5(b)(1)(IV). With respect to the fiscal year ending June 30, 1964, however, Section 1388(c) and (e) was in effect and the full amount of the allocation paid in stock or the fair market value of the stock must be included in the income of Acomex thereunder, depending on whether the amount of the allocation paid in stock was redeemable in money within 90 days. Because the record does not reveal whether Acomex was entitled to redeem in cash a portion of the patronage dividend paid to it in stock, such stock may be includible in the income of Acomex only to the extent of its fair market value. Section 1388(e)(1).

16. Based upon this Court's determination that Coastal sold hundreds of shares of stock for $35.00 per share and issued over 58,000 shares in payment of patronage dividends at the rate of $35.00 per share; that it distributed 400.6423 to Acomex in payment of patronage dividends at the rate of $35.00 per share, this amount being mutually agreed upon, Coastal's Board of Directors finding this amount to be the "prevailing sales price of the shares" and Acomex acquiescing in such (Finding of Fact No. 28), the Court is of the opinion that shares of stock used to pay the patronage dividends with respect to the last two years in this suit had a fair market value of $35.00 per share and the plaintiff is not entitled to a refund on this basis.

Accordingly, a Judgment conforming with the foregoing Findings of Fact and Conclusions of Law, approved as to form by both parties, shall be submitted by the United States within the time prescribed by the rules of this Court.