PEARSON and others, Appellants, vs. CLAM FALLS Co-
operative Dairy Association and others, Respond-
ents.

*May 20—June 16, 1943.*

*Charles D. Madsen* of Luck, for the appellants.
*Morris E. Yager* of Frederic, for the respondents.

FAIRCHILD, J.    The Clam Falls Co-operative Dairy Association (hereinafter referred to as the "Clam Falls Association") and the Frederic Co-operative Creamery Association (hereinafter referred to as the "Frederic Association") were both organized in 1916 and did business in Polk county from that time until 1938.    On October 29, 1938, the creamery building and most of the equipment of the Clam Falls Association were destroyed by fire.    Shortly thereafter negotiations were begun between the two associations which ultimately resulted in the forming of a new co-operative to take over the business and property of the two old associations.    Accordingly each association by a vote of a majority of its members resolved to sell its business to the new co-operative on certain conditions and in consideration of the new co-operative issuing stock to the members and patrons of the old associations in proportion to their interests.    At the time the resolution was adopted by the Clam Falls Association it had on hand a cash surplus of $5,970, and the resolution provided that the surplus be distributed to the patrons

in proportion to their business and that this credit be included in the interest of each member and patron when the amount of stock in the new association to which each was entitled was computed.

The plaintiffs are minority members of the Clam Falls Association who have refused to approve or take part in the formation of the new association. When the new association was formed under the name of Dawn Dairy Co-operative, it took over the assets and liabilities of both of the old associations and issued stock to those members who signed subscriptions. The stock to which the plaintiffs and other members of the Clam Falls Association who had taken the same position were entitled was issued to the Clam Falls Association and was subsequently left with the court pending the outcome of the present suit. The plaintiffs' interest in the fund is chiefly as patrons, though they were also members of the association.

The parties agreed upon the facts, and on the basis of these facts the trial judge ruled that the plaintiffs had no cause of action. He found that the proceedings leading to the organization of the Dawn Dairy Co-operative were in accordance with sec. 185.12, Stats., and that the stock in this association which had been issued was in full payment of all rights, title, and interest of the plaintiffs. The clerk of the court was appointed trustee of the certificates to hold them for the plaintiffs until they demanded delivery of them. The plaintiffs appeal from the judgment alleging: (1) That sec. 185.12 authorizes only merger as distinguished from consolidation; (2) that this section has not been complied with since by its last sentence—

"the directors of the purchasing association are authorized to hold the shares in trust for the vendor and to dispose of the same to such persons and within such time as may be mutually satisfactory to the parties in interest, and to pay the proceeds thereof as currently received to the vendor."—

(3) that if this section requires minority stockholders to accept stock in the new association, it is unconstitutional; (4) that there is no statutory authority allowing the association to pay patronage dividends in the stock of another association; (5) that the Clam Falls Association had been liquidated and so could not be merged or consolidated.

Sec. 185.12, Stats., by implication permits a co-operative to accept stock in a new association as payment for its assets in the course of a consolidation. This statute was in force at the time the two associations in question were organized and at the time that the plaintiffs became members. The last sentence of the section which was added in 1921 is permissive and does not require that the shares in a new corporation be converted into cash. Appellant contends that this section authorizes only mergers and not consolidations. Although the distinction between the two is well settled in this state (see *Union Indemnity Co. v. Smith,* 187 Wis. 528, 205 N. W. 492), here the statute is broad enough to cover both since in a consolidation the new corporation buys the assets of the old associations.

The first problem in the case at bar is whether this section of the statutes is constitutional in so far as it requires dissenting members of the vendor corporation to accept stock in the new corporation in payment for their interest as shareholders in the vendor corporation which is now dissolved. Since the statute was in force at the time the plaintiffs became members of the Clam Falls Association, its provisions must be held to have become part of their contract with the corporation. It follows that the consolidation pursuant to the statute did not deprive them of property without due process of law. See 15 Fletcher, Corporations, p. 50, sec. 7063; *Mayfield v. Alton Ry., Gas & Electric Co.* 198 Ill. 528, 65 N. E. 100. It is true that most statutes have a provision that dissenting stockholders have the option of taking cash instead of stock in the new corporation (see *In re Interborough Con-*

*solidated Corp.* (D. C.) 277 Fed. 455), but such a provision is not necessary to make the statute constitutional.

Statutory provisions and general corporation law confer upon certain proportions of the shareholders the broad powers of sale, merger, and alteration of the corporate organization. The general purpose for which the Clam Falls Association was originally organized is protected in the new or consolidated Dawn Dairy. There is a fair transfer and the prospects of shareholders and patrons do not appear to have been detrimentally affected. The majority members are exercising a power in the interest of all which existed under the statutes and which was a contractual element present at the time of the establishment of the original relation between the Clam Falls co-op and the members and patrons. Each entered into the relation subject to this power of sale, transfer, merger, and consolidation in the majority.

The legislature was aware of the fact that small co-operatives might be unable to unite, although their best interests might so dictate, unless they could do so without raising new capital. If a minority could insist on being paid in cash, they could wreck the plans for consolidation. It was within the legislative discretion to provide that in circumstances such as those presented here minority stockholders could be bound by the will of the majority. This is especially true in co-operatives of this nature where the members actively participate in the operations, as distinguished from a stock corporation most of whose shareholders are interested in it chiefly as an investment.

Assuming then that the stockholders could be forced to accept stock in the consolidated corporation for their stock in the old association, the problem still remains as to whether they must accept their patronage dividends from the old corporation in the form of stock in the new. Without deciding that in every case a patronage distribution comes within the terms of the word "dividend" in sub. (2) of sec. 185.16,

Stats., we think it is clear here that where the dividend to the patrons is declared in the resolution which approves a plan for consolidation and is made payable in the stock of the new corporation, the patrons have no right to insist on being paid in cash. By sec. 185.16 it was within the discretion of the directors or the majority of the stockholders whether or not a patronage dividend would be declared. They could have put this cash surplus into some other fund, but they chose to give the patrons a credit payable in Dawn Dairy stock. We think the plaintiffs are bound by this decision.

As a practical matter and from that viewpoint, the plaintiffs' situation has not been unduly affected by the reorganization or consolidation or whatever one may choose to term it. They were in a co-operative organization as members and patrons. They are still in one, and to all intents and purposes in the same relation to the same enterprise as they were before, although the membership has been enlarged. Their concern suffered the loss of buildings and equipment by fire. The majority of the members wanted to continue. They decided upon a plan that was fair and so far as human judgment goes, feasible. There is no question of fraud or collusion suggested. The enterprise is needed and the interest of each member and patron is guarded. There certainly was no better way to meet the situation. If a dissatisfied minority could insist on the existence of a creditor-and-debtor relationship under these circumstances and force the dissolution of the co-operative, there would be little efficacy to the statutes providing for the reorganization and consolidation of these societies in the communities where they serve a practical purpose.

*By the Court.*—Judgment affirmed.