**FOUNTAIN CITY CO-OP. CREAMERY ASS'N v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9667.

United States Court of Appeals
Seventh Circuit.
Feb. 17, 1949.

Martin L. Fugina, of Fountain City, Wis., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Arthur L. Jacobs, Atty., U. S. Dept. of Justice, of Washington, D. C., and Ellis N. Slack and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The Commissioner of Internal Revenue found and declared a deficiency in the income and declared value excess profits tax against the petitioner-taxpayer in the sum of $1,535.77. The Tax Court sustained the action of the Commissioner, and the taxpayer has appealed.

The taxpayer is a corporation of Wisconsin and claims to operate as a cooperative association under the laws of that state. It was engaged in the buying and selling of butter and in the buying and processing of butterfat. The taxpayer's patrons consisted of producers of butterfat, of whom some were stockholders of the association and some were not. Stock dividends not to exceed five per cent had previously been declared by the association but no consideration had been given to a distribution to patrons until 1943. In its tax return for 1943, the taxpayer showed a gross income of $63,383.45 and claimed deductions of $62,794.04, which included the sum of $5,088.55 which the association had set up in 1943 as a "Patrons' Equity Reserve." The reserve was set up for the butterfat patrons, whether stockholders or not. It is the amount of additional tax resulting from the disallowance of the deduction from gross income of this $5,088.55 which has given rise to this litigation.

It is the taxpayer's contention that this sum was always the property of its patrons, derived from net proceeds which were required by the statute of Wisconsin[1] to be distributed annually, and therefore the sum should never have been included in the gross income of the taxpayer. The statute provides that "the directors * * * shall apportion the net proceeds of the business at least once annually * * *."

What part of those proceeds belonged as a matter of right to the patrons? What part, if any, should go to the patrons rested in the discretion of the board of directors or a majority of the stockholders. Pearson v. Clam Falls Co-op. Dairy Ass'n, 243 Wis. 369, 374, 10 N.W.2d 132, 134. Until distributed, it all belonged to the association.

Since the taxpayer had at the beginning of 1943 accumulated a surplus of $25,430.53, the directors obviously had not distributed annually all the net proceeds except in the sense that they were recognized as surplus. This, of course, is not a showing that the net proceeds were the patrons' property. When the taxpayer's board of directors came to make a distribution on December 14, 1943, after declaring a five per cent stock dividend it resolved:

" * * * that all the remaining net income for said fiscal year is hereby distributed among the patrons of this association, both members and nonmembers, in the form of patrons equity reserve, in proportion to the monetary value of the dairy products delivered to the association during said fiscal year."

The statute contemplates that such patron dividends shall be paid in cash or stock. Section 185.16, Wis.Stat.1943. This so-called patrons' equity reserve was set up on the books, and certificates to patrons were issued against it. These certificates could not be converted into cash or stock to be paid out of the reserve in any event. Instead, the certificates provided that the holder had "a conditional equitable interest" in the reserve and if "in the opinion of the Board of Directors of said Association the cash reserves are greater than are reasonably necessary for sound financing of the Association" such excess cash may be used to pay off these "conditional equitable interests" in the patrons' equity reserve. On the other hand, if the association had a loss, the directors might apply the patrons' reserve in its entirety to meet that loss. The certificates were transfer-

---

[1] Section 185.16(1), Wis.Stat.1943.

able only on the books of the association and drew interest only if the directors so ordered. The debts of the association were prior to this reserve, and finally, upon liquidation of the association, if there were any of these so-called "conditional equitable interest" certificates in existence, they did not even stand above the rights of the common stockholders but had to share whatever was left, after payment of debts, with those stockholders. The certificates were issued pursuant to an amendment of the bylaws made at the annual stockholders' meeting on February 2, 1944, at which meeting the resolution establishing the patrons' equity reserve made on December 14, 1943, was ratified and approved and the bylaws amended to set forth the limitations that were incorporated in the certificates as indicated.

It is clear from the foregoing that instead of this patrons' equity reserve belonging to the patrons, it never left the control of the association which continued to treat it as its own. Its creation lay within the absolute discretion of the taxpayer's directors or stockholders and after creation, its continued existence was wholly at the will of the taxpayer's directors. This reserve never belonged to the patrons. It was and always remained the property of the taxpayer and was properly included by the Commissioner in the taxpayer's gross income.

The judgment of the Tax Court is affirmed.