HARBOR PLYWOOD CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20729. Promulgated January 31, 1950.

*Warren A. Doolittle, Esq.*, for the petitioner.
*William E. Koken, Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: Our sole question here is whether the amounts represented by the credit memorandums issued by Pacific are taxable to petitioner in the years when it received them, as contended by the respondent, or in the years when they were paid by Pacific, as petitioner contends; or, as both parties contend in the alternative, in the years when renegotiation of Pacific became barred by the statute of limitations.

A taxpayer keeping its books and making its returns on an accrual basis must report income when the right to receive it becomes fixed.

*Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. In *Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932, the court said, after a thorough review of the leading cases dealing with the different aspects of the accrual question:

> The complete definition would therefore seem to be that income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent.

If there is any contingency as to the taxpayer's right to the income, as distinguished from an uncertainty as to the time of its receipt, it is taxable in the year when the contingency is removed. *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88. Here the income in dispute had already been earned and had been credited to the petitioner on the books of Pacific when the credit memorandums were issued. There was no contingency as to the amount of income represented by the credit memorandums or of Pacific's right to receive it; nor was there any contingency as to the petitioner's right to whatever income might remain after renegotiation, should that occur. The mere possibility of renegotiation did not give rise to a liability which either Pacific or the petitioner could have accrued on its books, since it had not become fixed and was being strenuously protested by Pacific. No liability for renegotiation was set up in Pacific's books. Conceding that there was a possibility of renegotiation, there was no way of even approximating the amount of excessive profits that might be claimed by the Government. See *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281; *William Justin Petit*, 8 T. C. 228.

There can be no question but that Pacific, keeping its books on an accrual basis, was required to account for the entire amount of the commissions on sales made during the taxable years. It is now well settled, however, that cooperative associations, such as Pacific, engaged exclusively in selling the products of its stockholder members on a commission basis are not taxable on the income which, pursuant to their articles of incorporation or bylaws, or contracts, they are required to return to the stockholders each year as patronage dividends or rebates. See *San Joaquin Valley Poultry Producers' Assn.*, 136 Fed. (2d) 382; *Midland Cooperative Wholesale*, 44 B. T. A. 824; *United Cooperatives, Inc.*, 4 T. C. 93. This is true whether the amounts are actually paid to the members in cash during the taxable year or merely credited to them on the books of the association. *Midland Cooperative Wholesale, supra.* The reason for this rule is that the patronage dividends or rebates are at all times the property of the member stockholders, and nonmembers, and that the selling association is an agent or trustee or mere conduit for the income.

The petitioner devotes a substantial portion of its opening brief to the argument that it did not constructively receive the amounts represented by the credit memorandums in the years when they were issued. The question of constructive receipt is not involved. It might have been had the petitioner reported on a cash basis rather than an accrual basis. The Commissioner has not determined and does not now argue that petitioner constructively received any of the disputed income. Cases like *Kay Kimbell*, 41 B. T. A. 940, and *Howard Veit*, 8 T. C. 809, which petitioner cites, have no application here.

We think that the respondent has correctly determined that the amounts represented by the credit memorandums issued to petitioner in each of the taxable years accrued and are taxable to petitioner in those years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: The majority opinion recognizes that a taxpayer on the accrual basis is to report income when the right to receive it becomes fixed. At the time that the petitioner was informed, by the cooperative corporation, that a credit memorandum was being enclosed for the year, the petitioner was also informed that the Treasury Department had requested renegotiation and the distribution could not be made until the results of renegotiation were known. It seems to me this is a case where the right to receive income had not become fixed, but that there was a very great contingency. Until that contingency was removed I do not think that item was accrued. The majority opinion appears to treat the renegotiation as not of sufficient importance to constitute a contingency. It is referred to as "the mere possibility of renegotiation." Obviously it was a probability, for the Treasury Department had asked for it. The result of renegotiation was altogether problematical and contingent. In my opinion, the taxpayer upon the accrual basis should not be required to accrue such an uncertain and contingent item. I, therefore, dissent.