GEORGE BRADSHAW, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20699, 20700, 20701, 20702, 20703, 20704.

Promulgated February 3, 1950.

---

[1] Proceedings of the following petitioners are consolidated herewith: Mary E. Bradshaw; Warren L. Murphy; Vera Rose Murphy; Clifford M. Schumacher; and Lydia M. Schumacher.

*Maurice R. McMicken, Esq.*, and *Ivan Merrick, Jr., Esq.*, for the petitioners.

*William E. Koken, Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: In principle, the same question involved here was before us in *Harbor Plywood Corporation*, 14 T. C. 158, where we held that credit memorandums issued by a cooperative marketing association as rebates or patronage dividends were accruable and taxable to a member reporting on the accrual basis in the years when received, although not paid until a subsequent year. We pointed out that the distributions were made out of earnings already realized by the association which, in reality, belonged at all times to the contributing members.[2]

Substantially the same facts are present in the instant case. The notes issued to the partnership represented the partnership's proportional part of earnings already realized by the association which, under its articles of incorporation and bylaws, it was required to distribute to the partnership during the taxable years. The Co-op had the right to make the distributions in the form of registered redeemable notes, which it did, if, in the discretion of the trustees, this was necessary in order to maintain a sufficient working capital. The amounts represented by the notes issued to the partnership and other members were credited to them and carried as liabilities in the corporation's books. Like the credit memorandums in the *Harbor Plywood* case, *supra*, the notes were payable at any time when there was sufficient cash available. There was an uncertainty as to the time when the partnership would receive the cash, but no contingency as to its rights to receive it or as to the amount, such as would have prevented its accrual. See *United States* v. *Safety Car Heating & Lighting Co.*,

---

[2] *San Joaquin Valley Poultry Producers' Assn.*, 136 Fed. (2d) 382; *Midland Cooperative Wholesale*, 44 B. T. A. 824; *United Cooperatives, Inc.*, 4 T. C. 93.

297 U. S. 88. The partnership's rights to definite amounts of income became fixed when the notes were issued.

The petitioners argue that even if the notes are to be treated as dividends accruable in the taxable years when issued, they would have to be reported at their fair market value, under section 115 (a), Internal Revenue Code, and section 29.115–10, Regulations 111, and that the notes had no fair market value when received by the partnership.

In the first place, the notes in question were not dividends, in the ordinary sense, of corporate earnings voluntarily distributed to stockholders substantially in proportion to their stockholdings. They were, as described in the stipulation of facts, "a purchase rebate or so-called 'patronage dividend' on the amount of the purchases made * * * by said partnership from the Associated Grocers Co-op." The amounts of distributions were based not on stock ownership, but on the amount of patronage.

Furthermore, we can not find from the evidence that the notes were entirely worthless when issued to the partnership, or at any time thereafter. Neither is there any evidence on which we could determine a fair market value of anything less than their face value. The notes bore interest at the rate of 2 per cent per annum, which has been paid regularly when due. The Co-op was in a sound position financially at the time the notes were issued and, for all the evidence shows, has continued so. Its balance sheets for 1943, 1944, and 1945 show that it was solvent and financially able to pay all of its obligations, including the notes in question, during all those years. There is no evidence that it will not still be able to do so if and when it is dissolved and the notes thereby become due and payable.

It is to be noted that in the notice of deficiency the respondent determined that the patronage dividends in dispute accrued to the partnership during the years when the purchases on which they were computed were made from the Co-op. On that theory, the amount accruable to the partnership was $5,265.79 in 1944 and $4,810.24 in 1945. In his brief the respondent advances the alternative theory that the patronage dividends are accruable and taxable to the partnership in the years when it received the notes, with the result that the amounts accruable to the partnership are increased from $5,265.79 to $5,966.64 for 1944 and decreased from $4,810.24 to $3,733.89 for 1945.

We think that the issuance of the notes by the Co-op is what determined the time of the accrual of the income to the patrons. The amounts to be distributed under the Co-op's articles of association were not known until the accounting was made at the end of each half year and the trustees had determined how much of the income was to be set aside for reserves. It was only the remaining balance that was to be "apportioned and credited" to the members. (See

article V of the articles of association set out above.) While the members' rights to some undetermined portion of the income may have attached at the time the sales were made, which is the theory on which respondent determined the deficiencies, the amounts could not be ascertained with any reasonable accuracy until they had been determined by the board of directors. We think that as a practical matter the time for the accruals was when the rebates or patronage dividends were determined and credited to the members in the Co-op's books and the notes issued to them.

As noted above, a recomputation on this basis may result in an increased tax liability for 1944, but, since the respondent has not moved for any increase in the deficiency determined for either of the years before us, none may be found.

*Decisions will be entered under Rule 50.*