COLONY FARMS COOPERATIVE DAIRY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24144. Promulgated October 15, 1951.

*John W. Cragun, Esq.,* for the petitioner.
*Sanford M. Stoddard, Esq.,* for the respondent.
*Charles E. Nieman, Esq., E. L. Hensel, Esq.,* and *Karl D. Loos, Esq.,* amici curiae.

OPINION.

LEECH, *Judge:* By reason of the large amount of business done by petitioner, a cooperative, for its nonmembers, it is not entitled to and does not claim tax immunity. Nor is the question here one of its right to a deduction from gross income in computing net income subject to tax. Our question is its right to exclude from its gross receipts earnings upon business done for or with its members, where, under its charter, bylaws, and marketing contracts with its members, such profits are segregated for return to such members in the form of patronage dividends.

This problem is not new, and has often been before the courts. The accepted rule is that if the cooperative receives these earnings under an existing legal obligation to distribute them to its members, such earnings are not income of the cooperative and consequently are to be excluded in the computation of its gross income.

The determinative fact in establishing this petitioner's right to the exclusion is whether, at the time of its receipt of these earnings, it was under a legal obligation to pay them over to its members as patronage dividends. A thorough analysis and discussion of the principle appears in *United Cooperatives, Inc.*, 4 T. C. 93. It was clearly recognized in that decision that, to be entitled to the exclusion, the cooperative need not have paid the earnings in cash to its members if the agreement under its bylaws and contracts with its members permitted it to retain the cash for its use in the business and to make distribution to the members in the form of stock or other evidence of the extent of their individual participation in the fund.

Here the petitioner was organized as a nonstock corporation under the Virginia Cooperative Marketing Act of 1922. Its charter provides that the property rights and interests of the members shall be in proportion to the amount of business done by them through the

cooperative, as evidenced by certificates of interest issued and outstanding in the name of each member as recorded on the books. The bylaws adopted by petitioner include a mandatory provision that at the close of each year the profits arising from member business shall be computed and the amount thereof set aside on the books in a revolving fund, and that a certificate of interest showing the amount of the equity of each member in such fund be delivered to each member, such certificates to be payable when the revolving fund has, in the opinion of the directors, been accumulated to such proportions that certificates may be liquidated in cash without reducing the fund below the amount necessary for the operations of the association. The certificates thus issued are to be liquidated in cash, in the order of their issuance. The obligation of the petitioner to its members is again specifically evidenced by its contract with each member. The arrangement under the charter, bylaws, and membership contracts was meticulously carried out by the petitioner in each year since its organization.

Respondent, upon brief, appears to recognize the fact that petitioner, to be denied exclusion of the earnings in question from gross receipts must have received them without a legal obligation to distribute them to its members. It is argued, however, that upon this record such distributions were only to be made within the discretion of the directors. In support of this argument only one fact is pointed out as indicating that such power was only discretionary. This is the provision in the Virginia statute under which the petitioner was incorporated, that "the association *may* from time to time issue to each patron a certificate of equity evidencing the patron's interest in any fund, capital investment or other assets of the association. [Emphasis added.]" This argument overlooks the fact that the provision cited is in the enabling act under which the petitioner came into existence, and the section in question is permissive only. It merely allows the corporation the privilege of providing for distributions of certificates of interest within the discretion of its directors. However, the liabilities of the corporation are determined by the obligations to its members specifically assumed by it under its charter, bylaws and contracts with each member.

On this record we have no hesitation in concluding that the petitioner, through its bylaws and by its individual contracts with members, has specifically assumed an obligation to issue to each member a certificate in the amount of his participation in the profits realized upon member business, to segregate such profits on its books, and to liquidate in cash these certificates when the financial needs of the corporation permit such action.

It must be kept in mind that the funds represented by these certificates of interest are retained by the corporation with the consent of

its members and represent an investment by each of them in the business to the same extent as if the distribution had been made in cash and the amount in each instance had been repaid by the member to the association for its use as working capital.

That the distributions in the form of certificates of interest effected a distribution of the earnings just as effectively as though made in the form of cash, it is thought, cannot be disputed. We have held such distributions to be taxable income of the individual member. *Harbor Plywood Corporation*, 14 T. C. 158, affd. 187 F. 2d 734; *George Bradshaw*, 14 T. C. 162.

It is respondent's contention that the facts in the present case are similar to those in *Fountain City Cooperative Creamery Association*, 9 T. C. 1077, affd. 172 F. 2d 666, in which we held the taxpayer was not entitled to the exclusion. The facts in that case were that the cooperative was a stock company and the amount of the dividends upon its stock was not subject to limitation. Its directors might, in their discretion, allocate all of the earnings from member business as dividends upon the stock and consequently pay no patronage dividends. In view of this condition, the power thus held by the taxpayer's directors, we held that any action on their part in making a distribution of such earnings to the members was purely discretionary and voluntary and not taken under a legal obligation to so act. The cited case has no application here where the petitioner has no stock and the directors are definitely obligated by its bylaws and individual contracts with its members to segregate at the end of each year on its books the earnings from member business and to issue to each member a certificate evidencing his individual share of such earnings. The absence of this condition in *Fountain City Cooperative Creamery Association*, *supra*, was the reason for the conclusion reached by us in that case. The distinction between the two types of cases is illustrated in *Peoples Gin Co. v. Commissioner*, 118 F. 2d 72, in which the exclusion was denied, the court saying:

> This case is different from the cases relied upon by the petitioner. In those cases where the deduction was allowed the obligation to make rebates or refunds was in existence before the profits were earned.

In the present case the obligation to segregate the earnings in a revolving fund and to distribute to the members certificates of interest therein was assumed by the petitioner prior to the receipt of these earnings and did not come about through voluntary action on the part of petitioner's directors after such receipt.

The action of respondent in denying the exclusion is reversed. Since there were certain adjustments by respondent in computing the deficiency that are not put in issue by the petition,

*Decision will be entered under Rule 50.*