WILLIAM A. JOPLIN, JR., AND LOUELLA L. JOPLIN ET AL., PETITIONERS,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31489, 31490, 31491, 31492, 31493.   Promulgated March 19, 1952.

*Don O. Russell, Esq.,* for the petitioner.
*Gene W. Reardon, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Joseph F. Kohn and Anna Kohn; Joseph F. Kohn; S. Crews Reynolds and Gertrude Reynolds; and S. Crews Reynolds.

1528

OPINION.

LeMire, *Judge:* The question presented is whether income was realized by the taxpayers, in the respective taxable years involved, upon the allocation and distribution of the net savings or earnings of the Osceola Products Company to the petitioners who were members of the association, in the form of credits to its capital reserve account and the issuance of preferred stock of such corporation.

The petitioners, William A. Joplin, Jr., Joseph F. Kohn, and S. Crews Reynolds, were members of the Osceola Products Company, a nonprofit cooperative corporation exempt from tax under the provisions of section 101 (12) of the Internal Revenue Code, in effect in the taxable years involved herein. All of the income tax returns of the taxpayers for the taxable years in question were filed on a cash receipts and disbursements basis of accounting.

The taxpayers contend that the income of a tax exempt farmers' marketing cooperative represents income to the cooperative; that the

portion thereof allocated to the capital reserve account and the portion represented by the issuance of preferred stock are not taxable income to a member reporting on a cash basis until the cash is realized therefrom; and, in the alternative, if the preferred stock represents the receipt of something of value to be reported as income in the year of receipt then the amount to be reported is the fair market value of the preferred stock at the time of its receipt. It is conceded by the taxpayers that the $25 par value preferred stock had a fair market value equal to one-half its par value.

The taxpayers argue that the cases relied upon by the respondent such as *United Cooperatives, Inc.*, 4 T. C. 93; *Colony Farms Cooperative Dairy, Inc.*, 17 T. C. 688, involved nonexempt cooperatives and not the patrons; and that the cases of *Harbor Plywood Corporation*, 14 T. C. 158, affirmed per curiam 187 F. 2d 734; and *George Bradshaw*, 14 T. C. 162, which involved the question of realization of income by members of a nonexempt cooperative reporting on an accrual basis of accounting, are not controlling here.

Since the filing of briefs herein, this Court has decided *Estate of Wallace Caswell*, 17 T. C. 1190, in which we held that members of a tax exempt cooperative on a cash basis of accounting realized income upon the receipt of certificates representing their interests in the capital reserve of the cooperative, which certificates they were free to sell, exchange or assign to the extent of the fair market value thereof.

We think the *Caswell* case is controlling here on the question of the realization of income by the petitioners on the receipt of the certificates of preferred stock of the cooperative. We, therefore, hold that the petitioners realized income to the extent of the fair market value of those certificates in the years of their receipt.

The respondent's determination that the petitioners are also taxable on their proportional shares of the net earnings of the cooperative which were credited to the capital reserves but in respect of which no certificates or other evidence of such interests were issued to the members can be sustained only on the theory of constructive receipt and reinvestment of such amounts by the petitioners. Since the cooperative had a right under its charter and its by-laws, and under the provisions of section 101 (12) of the Code, to retain a portion of the net earnings for operating capital reserve, such retained reserves were its income, although exempt from tax, and not income to the patrons until actually distributed, or made available to them. See *United Cooperatives, Inc., supra; Harbor Plywood Corporation, supra;* and *Dr. P. Phillips Cooperative*, 17 T. C. 1002.

We do not think that the taxable or nontaxable status of the cooperative determines the tax liability of the patrons on such nondistributable profits. In no case should the constructive receipt theory

apply, we think, unless at some time the earnings of the cooperative were made available to or were subject to the control of the patron.

Therefore, with respect to the amounts credited to capital reserve we hold that the petitioners received no taxable income.

There remains for determination the fair market value of the certificates of preferred stock. The charter of the Osceola Products Company authorized the issuance of preferred stock on the basis of a par value of $25 per share. It is a generally recognized principle of law that where a corporation is authorized to issue its shares of stock having a par value it can not issue such shares for a consideration less than par. When the certificates in question were issued, the net earnings of the cooperative were charged with the sum of $25, the par value of the shares. The certificates of preferred stock were transferable, bore 6 per cent noncumulative dividends, and could be redeemed upon call of the board of directors for cash at the par value plus dividends thereon declared and unpaid. Upon dissolution, the preferred shares were entitled to receive the par value plus declared and unpaid dividends before any distribution upon the common stock. The record further establishes that in each of the respective taxable years in question various amounts of preferred stock were sold and issued, for which the corporation received the par value of $25 per share.

At the hearing, the taxpayers offered the testimony of two local bankers who expressed the opinion that the fair market value of the preferred shares was around 50 per cent of their par value. We regard such opinion evidence of little probative value in the light of the other facts and circumstances disclosed by this record. We hold that the fair market value of the preferred stock was the equivalent of its par value, and have so found as a fact. Cf. *Estate of Wallace Caswell, supra.*

*Decisions will be entered under Rule 50.*