**COASTAL CHEMICAL CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 74–4080.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1977.

John C. Satterfield, Yazoo City, Miss., J. Dudley Buford, Jackson, Miss., for plaintiff-appellant.

Robert E. Hauberg, U.S.Atty., Joseph E. Brown, Jr., Asst. U.S.Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., Jack D. Warren, Atty., Leonard J. Henzke, Jr., Gilbert E. Andrews, Jr., Acting Chief, Richard Farber, Tax Div., U.S.Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WISDOM and MORGAN, Circuit Judges, and LYNNE,* District Judge.

WISDOM, Circuit Judge:

This is an action by Coastal Chemical Corporation (Coastal) for the refund of $67,277.77 in income taxes plus interest alleged to have been erroneously assessed and collected for its fiscal years ending June 30, 1961, 1962, 1963, and 1964. The district court rendering judgment for the United States found that patronage refunds distributed by Coastal to Acomex Agentes Commerciales en Mexico, S.A. (Acomex) constituted taxable income to Acomex and were therefore subject to withholding under §§ 1441 and 1442 of the Internal Revenue Code. The district court also found that the fair market value of the stock distributed as a patronage refund to Acomex in 1963 and 1964 was $35 a share.[1] We affirm the district court judgment.

---

* Senior District Judge, for the Northern District of Alabama, sitting by designation.

1. Coastal filed its notice of appeal on November 26, 1974 invoking the jurisdiction of this Court under 28 U.S.C. § 1291.

## I.

Coastal is a corporation organized under the laws of the State of Mississippi. Acomex, a corporation organized under the laws of Mexico, is not engaged in a trade or business in the United States.[2] Its domicile and principal place of business is in Mexico City. During the years in issue, Coastal's capital stock consisted of four classes of common stock denominated Class A, Class B, Class C, and Class D. On October 20, 1960, Acomex acquired forty shares of Coastal Class A stock and at all material times has been one of Coastal's Shareholders.

Coastal engaged in manufacturing and selling agricultural fertilizers and Acomex engaged in the business of importing fertilizers for sale to Mexican farmers and dealers. In each of the years in question, Acomex purchased mixed fertilizers from Coastal which it thereafter sold to residents or citizens of Mexico.

Coastal's charter (Art. IV. Sec. E), provided that "[t]he primary purpose of the corporation [was] to provide commodities to stockholders who are bona fide producers of agricultural products at cost . . . ." The charter further provided that, unless specifically approved by the board of directors, no sale or transfer of the corporation's stock was to be made to any entity that was not similarly engaged in the production of agricultural products. Under

2. Pursuant to the motion of the government, Acomex was dismissed as a party in this suit for lack of in personam jurisdiction.

3. The purchases by Acomex from Coastal were as follows:

|  | Tons Produced By Coastal | Tons Purchased By Acomex | Total Purchase Price Paid by Acomex |
|---|---|---|---|
| 1961 | 128,385 | 2,789.11 | $264,762.98 |
| 1962 | 188,233 | 6,079.71 | $482,209.39 |
| 1963 | 332,779 | 3,356.01 | $231,471.60 |
| 1964 | 402,347 | 3,126.25 | $206,687.63 |

4. The specific amounts of the patronage dividends or refunds and the dates of payments thereof were as follows:

Art. IV. Sec. F of Coastal's charter, each owner of the corporation's Class A or Class B stock was entitled to the preferred patronage right to purchase during each fiscal year of the corporation, any of the products manufactured by the corporation (except straight nitrogen fertilizer), having a total purchase price of up to one and one-half times the par value of his stock. The charter (Art. V. Sec. B) also provided that as of the end of each fiscal year, all the excess of the aggregate selling price over the aggregate cost of manufactured products sold to stockholders would revert to each stockholder-patron in proportion to the amount of his patronage during the year.

During the years in question, Acomex purchased mixed fertilizer from Coastal[3] and was therefore entitled to patronage refunds or dividends. Accordingly, at the end of each of the years in issue, Coastal notified Acomex in writing that patronage refunds in specific amounts were due and payable to it. These notices advised Acomex as to the stated dollar amount of the earnings of Coastal allocated to Acomex and the portion constituting patronage dividends to Acomex.[4] The amount of the patronage dividends to which Acomex was entitled was paid to it in cash and certificates of Coastal's Class A common stock.[5] For purposes of paying the patronage dividend, the prevailing sale price of the shares of stock delivered to Acomex was determined by the board of directors of Coastal

|  | Amount Due Per Notice | Payment Date |
|---|---|---|
| 1961 | $40,402.83 | 8-17-61 |
| 1962 | $71,285.50 | 8-15-62 |
| 1963 | $37,864.59 | 8-16-63 |
| 1964 | $38,662.16 | 8-15-64 |

5. The payments to Acomex were allocated as follows:

|  | Cash Paid | Value Assigned to stock | No. of Shares | Amount of Patronage Refund |
|---|---|---|---|---|
| 1961 | $ 305.29 | $ 40,097.63 | 1,336.58 | $ 40,402.83 |
| 1962 | 10,175.12 | 61,110.38 | 2,037.01 | 71,285.50 |
| 1963 | 27,920.18 | 9,944.41 | 284.12 | 37,864.59 |
| 1964 | 34,584.90 | 4,078.07 | 116.51 | 38,662.16 |
|  | $72,984.59 | $115,230.49 | 3,774.24 | $188,215.08 |

to be $30 per share in 1961 and 1962 and $35 per share in 1963 and 1964.[6]

In computing its income tax liability for each of the years in question, Coastal excluded from its taxable income the amount of patronage dividends it had paid to Acomex. During these years, Coastal filed Treasury Forms 1042 (U.S. Annual Return of Income Tax to be Paid at Source) and 1042S (U.S. Annual Information Statement of Income Paid to Nonresident Aliens, Etc.) with the Director of International Operations, Internal Revenue Service, Washington, D. C. On these forms, Coastal reported that it paid specific amounts of gross income to Acomex, that the nature of such income was "patronage refund", that no tax was due thereon, and that the amounts so paid were exempt from withholding.

On March 18, 1963, Coastal adopted a "consent" by-law conforming to the provisions of Section 1388(c)(2)(B) of the Internal Revenue Code of 1954.[7] The by-law provided as follows:

Each person who hereafter applies for stock and becomes a stockholder in this Corporation and each stockholder of this Corporation on the effective date of this provision who continues as a stockholder after such date shall, by such act alone, consent that the amount of any distribution with respect to his patronage occurring after July 1, 1963, which are made in written notices of allocation (as defined in 26 U.S.C. 1388) and which are received by said stockholder from the Corporation, will be taken into account in the manner provided in 26 U.S.C. 1385(a) in the taxa-

ble year in which such written notice of allocation are received by him.

Acomex did not file with any office or official of the United States a United States income tax return for any of the years in issue.

Upon audit of the Treasury Forms 1042 and 1042S filed by Coastal, the Commissioner determined that the amounts of the patronage refunds paid to Acomex, a nonresident alien, were subject to the withholding of income tax at the source under the provisions of Sections 1441(a) and 1442 of the Internal Revenue Code of 1954. A statutory notice of deficiency in taxes plus interest totalling $67,277.77 based upon this determination was sent to Coastal on May 23, 1966. Thereafter, the amount of the deficiency was assessed against Coastal.[8]

On about October 3, 1966, Coastal mailed a check for $67,277.77 to the Internal Revenue Service in payment of the assessed deficiency. Subsequently, Coastal and Acomex each filed claims for refund and upon denial of those claims they instituted the instant action. The government moved to dismiss the suit on the ground that Coastal was not the real party in interest and that the suit should be brought by Acomex in the United States District Court for the District of Columbia, under 26 U.S.C. Section 1402(a)(2). On December 18, 1972, the district court denied the government's motion to dismiss but dismissed Acomex as a party to this suit for lack of jurisdiction.[9]

With respect to the merits of the controversy between the parties, the district court

---

**6.** In its fiscal year 1963, Coastal sold 231 shares of its Class A common stock for $35 per share and issued 28,303 shares in payment of patronage dividends at the rate of $35 per share. During 1964, Coastal sold 91 shares at $35 per share and issued 29,753 shares in payment of patronage dividends at the same rate of $35 per share.

**7.** This by-law became effective on the date of its adoption and due notice thereof was given to the shareholders.

**8.** In 1959 Coastal requested a ruling from the International Revenue Service as to whether patronage dividends paid to nonresident alien

stockholders were taxable to such stockholders and, if such dividends were taxable, whether Coastal was required to withhold the tax owing with respect to the dividends. On December 18, 1964 the Internal Revenue Service issued a letter ruling to Coastal advising them that the patronage dividends were includible in the taxable income of their nonresident alien stockholders and that Coastal under Section 1441(a) of the 1954 Code, was required to withhold income taxes from those dividends.

**9.** The government has not appealed the court's ruling.

held that the patronage dividends paid by Coastal to Acomex during the years in issue constituted taxable income to Acomex and that, therefore, Coastal was required under Sections 1441 and 1442 of the Code, to withhold 30 percent of the amount of the patronage dividends paid to Acomex since that corporation was a nonresident alien. The court further held that Coastal, as a statutory withholding agent for Acomex was liable for the tax under Section 1461 of the Code. The district court also rejected Coastal's alternative contention that even if Acomex was subject to tax on the patronage dividends, the amount of tax the Commissioner determined was owed was overstated for the years 1963 and 1964, because the market value of the stock issued to Acomex in those years in payment of the patronage dividends was $30 per share rather than $35 as determined by the Commissioner. Coastal then appealed.

**10.** SEC. 1441. WITHHOLDING OF TAX ON NONRESIDENT ALIENS.

(a) [as amended by Sec. 110(d)(1), Mutual Educational and Cultural Exchange Act of 1961, P.L. 87–256, 75 Stat. 527 and Sec. 302(c), Revenue Act of 1964, P.L. 88–272, 78 Stat. 19] *General Rule.*—Except as otherwise provided in subsection (c), all persons, in whatever capacity acting (including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States) having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual or of any foreign partnership not engaged in trade or business within the United States and composed in whole or in part of nonresident aliens, shall (except in the cases provided for in section 1451 and except as otherwise provided in regulations prescribed by the Secretary or his delegate under section 874) deduct and withhold from such items a tax equal to 30 percent thereof, except that in the case of any item of income specified in the second sentence of subsection (b), the tax shall be equal to 14 percent of such item.

(b) [as amended by Sec. 40, Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606, Sec. 110(d)(1), Mutual Educational and Cultural Exchange Act of 1961, supra, and Sec. 302(c), Revenue Act of 1964, *supra*] *Income Items.*—The items of income referred to in subsection (a) are interest (except interest on deposits with persons carrying on the banking

## II.

## LEGAL ISSUES PRESENTED.

The resolution of three issues is necessary in determining the propriety of the district court's judgment, although only the first issue requires extended discussion. (1) Do the patronage refunds constitute income to Acomex? (2) Assuming the refunds constitute income to Acomex, is this income subject to the withholding provisions of Sections 1441 and 1442?[10] (3) Was the District court's determination that $35 was the fair market value of the stock distributed to Acomex as part of the patronage refund for the years 1963 and 1964 clearly erroneous?

A. *Patronage Refunds are Income to Acomex.*

Historically patronage refunds[11] have consistently been treated as income to the patron,[12] and the enactment of Subchapter

business paid to persons not engaged in business in the United States), dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, and amounts described in section 402(a)(2). The items of income referred to in subsection (a) from which tax shall be deducted and withheld at the rate of 14 percent are * * *

SEC. 1442. WITHHOLDING OF TAX ON FOREIGN CORPORATIONS.

In the case of foreign corporations subject to taxation under this subtitle not engaged in trade or business within the United States, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 or section 1451 a tax equal to 30 percent thereof; except that, in the case of interest described in section 1451 (relating to tax-free covenant bonds), the deduction and withholding shall be at the rate specified therein.

**11.** The terms patronage and patronage refund are used interchangeably. The terminological differences, then, are not intended to have significance. However, a difference does exist between a patronage dividend and a traditional dividend, and the terminology will so indicate.

**12.** *Harbor Plywood Corp. v. Commissioner,* 14 T.C. 158 (1950), *aff'd.* 9 Cir. 1951, 187 F.2d 734; *Bradshaw v. Commissioner,* 14 T.C. 162 (1950); *Mississippi Valley Portland Cement Co. v. United States,* 5 Cir. 1969, 408 F.2d 827, fn. 6 & 7; *United States v. Mississippi Chemical Co.,* 5

T of the Code [13] in 1962 reinforced this basic idea.

In 1951, Congress first formally provided for the deduction of patronage refunds by cooperatives, and at the same time provided that such dividends would be taxable as gross income to the patron.[14] The Treasury Department later published Regulations requiring inclusion of the face value of capital stock, revolving fund certificates, and retain certificates in the patron's gross income.[15] This Court in *Commissioner v. Carpenter*, 5 Cir. 1955, 219 F.2d 635 in effect invalidated the Regulations to the extent they required inclusion of the face value of revolving fund certificates which had no fair market value.[16] The consequence of the *Carpenter* decision was a revision of Section 1.61–5(b)(1) of the Regulations by the Treasury Department. The revised regulations provide that revolving fund or retain certificates, or capital stock would be includible in the patron's gross income only to the extent of their fair market value. T.D. 6428, 1959–2 Cum.Bull. 26. However, at all times, as indicated implicitly in *Carpenter* and explicitly in the Regulations, patronage refunds constituted income to the patron. The only question which was producing difficulties was the manner in which stocks and certificates distributed as patronage refunds would be valued in determining the amount of income the patron must include in gross income.

In 1962, Congress enacted Subchapter T of the Code, Sections 1382 through 1388, which determines the tax treatment for cooperatives and patrons as to patronage refunds issued in tax years beginning after December 31, 1962, Section 1.1382–2(b)(2) of the Treasury Regulations on Income Tax (1954 Code). The Subchapter T system usually permits the cooperative to deduct the full face value of revolving fund or retain certificates or stock if the entire stated amount is paid in cash within 90 days, or the patron agrees to take such amount into his current income, and at least 20 percent of such amount is paid in cash immediately. Sections 1382(b)(1), 1385(a)(1), 1388(c) and (e)(2). Other revolving fund or retain certificates or capital stock payable as patronage refunds are generally deductible when redeemed in money or other property, Section 1382(b)(2), and are includible in the income of the patrons to the extent of their fair market value, Sections 1385(a)(1), 1388(d) and (e)(1). The mischief, then, which Subchapter T was designed to correct was the situation created by the *Carpenter* decision, in which the patronage dividend escaped taxation altogether in that the cooperative deducted the certificate's stated value but the patron did not include it as it had no fair market value.[17]

The instant case does not present the situation Subchapter T was designed to remedy. The patronage dividends to Acomex were in the form of allocations of proportionate profits on the corporate books. These allocations were paid primarily in capital stock with negligible amounts

Cir. 1964, 326 F.2d 569; *Commissioner v. Carpenter*, 5 Cir. 1955, 219 F.2d 635; *Garman v. Commissioner*, decided April 11, 1963, (P. H. Memo TC Section 63,104); Section 1.161–5 of the Treasury Regulations (1954 Code).

**13.** 26 U.S.C. Section 1382 *et seq.* (1962).

**14.** *See* S.Rep.No.781, 82nd Cong., 1st Sess. 21 (1951–2 Cum.Bull. 458, 472–473), U.S.Code Cong. & Admin.Serv. 1951, p. 1969, explaining the new Section 101(12) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed.).

**15.** Section 39.22(a)–23(b) of Treasury Regulations 118; Section 1.61–5(b)(1) of the Treasury Regulations (1954 Code) as added by T.D. 6272, 1957–2 Cum.Bull. 18, 24–25.

**16.** Before the 1951 legislation, the rule seems to have been that patronage dividends payable in stock or notes were includible in the patron's income only to the extent of their fair market value. *E. g., Bradshaw v. Commissioner*, 14 T.C. 162, 167 (1950); *Joplin, Jr. v. Commissioner*, 17 T.C. 1526 (1952). In *Raley v. United States*, 5 Cir. 1974, 491 F.2d 136, this Court recently reemphasized that the nontaxability holding of *Carpenter* was based solely on the absence of any fair market value in the certificates there.

**17.** For an analysis of Subchapter T and an explanation of its relationship to prior law *see* Logan, Federal Income Taxation of Farmers and Other Cooperatives, Part II, 44 Tex.L.Rev. 1269–1307 (1966).

being paid in cash. There was no question, however, that the stock had a fair market value and, therefore, the law prior to Subchapter T, as well as Subchapter T itself, required inclusion of the refunds in Acomex's gross income.[18]

### (1) *Subchapter T.*

■ Subchapter T was made effective as to taxable years beginning December 31, 1962. It is effective therefore only with respect to the fiscal year which began on July 1, 1963 and ended on June 1, 1964, which is the last year in question. With respect to this last year, Section 1385 requires inclusion of the patronage dividends in the recipient's gross income.

The term "patronage dividend" is defined in Section 1388 to mean an amount paid by a cooperative to a patron, (1) on the basis of quantity or value of business done with or for such patron, (2) under an obligation of the cooperative to pay such amount, which obligation existed before the cooperative received the amount so paid, and (3) which is determined by reference to the net earnings of the cooperative from business done with

or for its patron. The agreement, which antedated the purchases by Acomex, between Coastal and Acomex provided that purchases by Acomex from Coastal for amounts in excess of Coastal's costs allocable to Acomex were to be refunded. The district court found, and we agree, that these payments to Acomex were "patronage dividends" within the meaning of Section 1388. The payments must be included in Acomex's gross income under Section 1385.[19]

Furthermore, Acomex consented to take into its income patronage dividends paid to it by Coastal with respect to the fiscal year ending June 30, 1964, by retaining stock ownership in Coastal after March 18, 1963, when Coastal adopted the "consent by-law" in accordance with Section 1388(c)(2). Therefore, with respect to the last year in issue, Subchapter T mandates inclusion of the "dividend" in Acomex's income.

### (2) *Law Prior to Subchapter T.*

■ Although Section 1385 does not apply to the first three of the four years in issue, the law prior to the enactment of

---

**18.** The allocations of patronage dividends in fiscal year 1964, which is the only issue governed by Subchapter T, is not taxable to the extent of their face value, since 20 percent of their amount was not paid in cash "money or . . . qualified check". Code Section 1388(c)(1)(B); *see* Logan Federal Income Taxation of Farmers and Other Cooperatives, 44 Tex.L.Rev. 1269, 1966.

**19.** SEC. 1385 [as added by Sec. 17(a), Revenue Act of 1962, *supra*]. AMOUNTS INCLUDIBLE IN PATRON'S GROSS INCOME.

(a) *General Rule.*—Except as otherwise provided in subsection (b), each person shall include in gross income—

(1) the amount of any patronage dividend which is paid in money, a qualified written notice of allocation, or other property (except a nonqualified written notice of allocation), and which is received by him during the taxable year from an organization described in section 1381(a),

(2) any amount, described in section 1382(c)(2)(A) (relating to certain nonpatronage distributions by tax-exempt farmers' cooperatives), which is paid in money, a qualified written notice of allocation, or other property (except a nonqualified written notice of allocation), and which is received by

him during the taxable year from an organization described in section 1381(a)(1).

\* \* \* \* \* \*

SEC. 1388 [as added by Sec. 17(a), Revenue Act of 1962, *supra*]. DEFINITIONS; SPECIAL RULES.

(a) *Patronage Dividend.*—For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—

(1) on the basis of quantity or value of business done with or for such patron,

(2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and

(3) which is determined by reference to the net earnings of the organization from business done with or for its patrons.

Such term does not include any amount paid to a patron to the extent that (A) such amount is out of earnings other than from business done with or for patrons, or (B) such amount is out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions.

\* \* \* \* \* \*

Subchapter T requires the same result. In fact, on points relevant here, Subchapter T merely restated prior law. See Treasury Regulations Section 1.61–5.[20] In *Mississippi Valley Portland Cement Co. v. United States,* 5 Cir. 1969, 408 F.2d 827, 831 fn.7, this Court stated that "with respect to the definition of a patronage distribution, . . . sections 1381 *et seq.* are merely a codification of prior case law." *Accord, Iberia Sugar Cooperative, Inc. v. United States,* 5 Cir. 1973, 480 F.2d 548, 550. More specifically, the Finance Committee's report on the Revenue Act of 1962, S.Rep.No.1881, 87th Congress Second Sess., p. 111 (1962–63 Cum.Bull. 707), U.S.Code Cong. & Admin. News 1962, pp. 3414–3415 states:

> The President recommended that what was thought to be the law in 1951 be provided specifically in the statute. Under the recommendation cooperatives would be allowed to deduct amounts allocated in cash or scrip as patronage dividends and patrons would be currently taxable on the patronage dividends allocated to them arising out of business activities.

> The House bill adopts an approach which in substance is substantially the same as that recommended by the President. It provides that the cooperative is not required to take patronage dividends paid in money, qualified allocations, or other property, except non-qualified allocations, into account in determining taxable income. A deduction is also provided for the non-qualified allocations when they are redeemed. For the patron, the bill provides that these same amounts (to the extent not attributable to purchases for personal living expenses or capital items) are to be included in the income for tax purposes in the year received (or in the case of a non-qualified allocation, when redeemed).

Subchapter T, then, suggests no different result in the present context than that indicated by prior law, and the prior law was unambiguous in requiring the inclusion of patronage dividends in the gross income of the patron.[21]

Coastal misplaces its reliance on *United States v. Mississippi Chemical Co.,* 5 Cir. 1973, 326 F.2d 569 and on *Uniform Printing and Supply Co. v. Commissioner,* 7 Cir. 1937, 88 F.2d 75 to support its claim that patronage dividends are not taxable to the patron. In fact to the extent these cases bear on our decision, they are supportive of the government's position. In *Mississippi Chemical* the issue was not whether the patronage dividends constituted income to the patron but whether the taxpayer cooperative could exclude the patronage dividends from its income. The Court held that the dividends were true patronage dividends and therefore excludable from the income of the cooperative. Significantly for our purposes, the Court explained:

> When a legally enforceable obligation exists to refund to qualified purchasers (stockholder-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, such receipts are income of the patron and not income of the cooperative.

326 F.2d at 570–71. Contrary to Coastal's assertion, the *Mississippi Chemical* decision indicated, although in dicta, that patronage dividends are income to the recipient.

Similarly *Uniform Printing* fails to supply support for Coastal's contention. The issue there as in *Mississippi Chemical* was whether the taxpayer could exclude from its income amounts it had distributed to its patrons. The determinative question was whether the distributions constituted regular dividends or whether they were bona fide patronage dividends. Once the Seventh Circuit determined that the distributions were true patronage dividends, it followed that the cooperative could exclude this amount from its gross income. As in *Mississippi Chemical* the court said

---

**20.** Another aspect of Section 1.61–5 of the Regulations was approved in *Raley v. United States,* 5 Cir. 1974, 491 F.2d 136.

**21.** See cases and Regulations cited in footnote 12.

If the payment of this sum is a dividend, it should have been included in petitioner's taxable income for 1930. If it was a refund or rebate to customers, it was not a part of petitioner's taxable income, for the sum should have been included in the stockholders' taxable incomes.

88 F.2d at 76. Again, though in dicta, the court's thought was that patronage refunds constituted income to the patron.

B. *The Patronage Dividends Paid by Coastal to Acomex were Includable in Acomex's Gross Income and, Therefore, Coastal was Required to Withhold Income Taxes from the Payment of Those Dividends Under Section 1442.*

■ Section 1442 of the Code, provides that in the case of a foreign corporation [22] subject to United States tax, a tax of 30 percent "shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in Section 1441.[23] Under Section 1441(b), withholding is required with respect to interest, dividends, rent, salaries, and all other types of fixed or determinable annual or periodic gains, profits, or income. It is not necessary to decide whether the term "dividends" includes patronage dividends for patronage dividends are certainly determinable periodic income. This is made clear by Treasury Regulations Section 1.1441–2(a)(2), which provides as follows:

Income is fixed when it is to be paid in amounts definitely predetermined. Income is determinable whenever there is a basis of calculation by which the amount to be paid may be ascertained. The income need not be paid annually if it is paid periodically; that is to say, from time to time, whether or not at regular intervals.

Acomex certainly received income from "time to time", if not annually, and there was a basis of calculating the amounts it was to be paid. Nothing more is necessary to bring the withholding requirements of Sections 1441 and 1442 into play. See Revenue Ruling 66–53, 1966–1 Cum.Bull. 206. Accordingly, since Coastal failed to withhold taxes from Acomex as required it is liable for those taxes under Section 1461.[24]

---

**22.** Foreign corporations which are not engaged in carrying on a trade or business in the United States are subject to a 30 percent tax on income received from sources within the United States. Section 881 of the Internal Revenue Code of 1954

SEC. 881. TAX ON FOREIGN CORPORATIONS NOT ENGAGED IN BUSINESS IN UNITED STATES.

(a) *Imposition of Tax.*—In the case of every foreign corporation not engaged in trade or business within the United States, there is hereby imposed for each taxable year, in lieu of the taxes imposed by section 11, a tax of 30 percent of the amount received from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (including amounts described in section 631(b) and (c) which are considered to be gains from the sale or exchange of capital assets).

**23.** See footnote 10.

**24.** SEC. 1461. RETURN AND PAYMENT OF WITHHELD TAX.

Every person required to deduct and withhold any tax under this chapter shall, on or before March 15 of each year, make return thereof and pay the tax to the officer designated in section 6151. Every such person is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this chapter.

Treasury Regulations on Income Tax (26 C.F.R.)

§ 1.61–5 *Allocations by cooperative associations; per-unit retain certificates—tax treatment as to cooperatives and patrons.*

(a) *In general.* Amounts allocated preceding taxable year of the cooperative association. The determination of the extent of taxability of such amounts is in no way dependent upon the method of accounting employed by the patron or upon the method, cash, accrual, or otherwise, upon which the taxable income of such patron is computed.

(b) *Extent of taxability.* (1) Amounts allocated to a patron on a patronage basis by a cooperative association with respect to products marketed for such patron, or with respect to supplies, equipment, or services, the cost of which was deductible by the patron under section 162 or section 212, shall be included in the computation of the gross income of such patron, as ordinary income, to the following extent:

C. *The District Court Finding that $35 was the Fair Market Value of the Stock Paid to Acomex as a Patronage Dividend in 1963 and 1964 was not Clearly Erroneous.*

■ Coastal asserts as an alternative contention, that even if the patronage dividends were taxable to Acomex, it is entitled to a partial refund of the taxes assessed and collected by the Commissioner with respect to its years 1963 and 1964, because the fair market value of its stock which was distributed to Acomex with respect to those years in payment of the patronage dividend allocations was $30 per share, rather than $35 as determined by the Commissioner and found by the district court. Based on our review of the record, we find that the district court's determination of market value is not clearly erroneous.[25]

The judgment of the district court is AFFIRMED.

(i) If the allocation is in cash, the amount of cash received.

(ii) If the allocation is in merchandise, the amount of the fair market value of such merchandise at the time of receipt by the patron.

(iv) If the allocation is in the form of capital stock, the amount of the fair market value, if any, of such capital stock at the time of its receipt by the patron.

25. Rule 52(a), Federal Rules of Civil Procedure.